STATE of Indiana On The Relation Of The POST–TRIBUNE PUBLISHING COMPANY, and Charles Kingsbury, Relators,

v.

PORTER SUPERIOR COURT, and Honorable Marvin E. McLaughlin, As Special Judge of the Porter Superior Court, Respondents.

No. 580S139.

Supreme Court of Indiana.

Nov. 25, 1980.

Rehearing Denied Feb. 3, 1981.

Richard W. Cardwell, Indianapolis, Frederick M. Cuppy, Merrillville, for relators.

Marvin D. McLaughlin, pro se and for respondents.

DeBRULER, Justice.

This is an original action instituted by relators, a newspaper publishing company and its reporter, seeking an alternative writ of mandate and prohibition requiring the respondent court to expunge its orders closing a pre–trial hearing upon a motion to be let to bail and withholding a transcript of the hearing on the motion until the swearing of the jury prior to trial. Respondent, the Honorable Marvin E. McLaughlin, Judge of the Knox Circuit Court, made these orders in a criminal case pending in the Porter Superior Court over which he had assumed jurisdiction as Special Judge. The case was based upon a charge against one Todrei D. Sanders for murder in the stabbing death of one Michael Spagoletti.

Relators do not contend that respondents are without authority or jurisdiction to order the closure of pre–trial judicial proceedings under any circumstances. It is, however, relators' contention in their own words that respondents are without authority or jurisdiction to order the closure of such proceedings (1) without first affording relators a meaningful opportunity to be heard, and (2) without making sufficient findings of fact and conclusions of law to support such order. They contend that the denial of access to the hearing and to the transcript has violated their constitutional rights under Amendments I and XIV to the United States Constitution and under Art. I, § 9, and Art. I, § 12, of the Indiana Constitution, statutory rights under Ind. Code § 35–1.1–2–1, and rights under the common law of Indiana. Because of the limitations inherent in original action litigation and because of special limitations in this particular record, we choose to assume, without deciding the specific issues, that the public and the press have a right to attend judicial proceedings in the courtroom recognized and protected by the foregoing constitutional provisions and state laws. We nevertheless conclude that no violation of such assumed rights occurred in the circumstances presented in this case.

■ There is venerable tradition and practice in Indiana courts engaged in the administration of the criminal law which requires proceedings to be open to attendance by the general public, the press and other news media, and friends of the accused. Open judicial proceedings are the norm and are favored. This Court is slow to lend its sanction to secrecy and exclusion in the proceedings of a court. *Reed v. State*, (1896) 147 Ind. 41, 46 N.E. 135. This deep concern and caution springs primarily from considerations going to the public trial right of the accused guaranteed by the Sixth Amendment to the United States Constitution and Art. I, § 13, of the Indiana Constitution. The public, press, and other news media do not participate in the enjoyment of that right. *Gannett Co., Inc. v. DePasquale*, (1979) 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608. It is personal to the accused and may be waived, and does not carry with it the further right to a trial from which the public and press are barred. *Marshall v. State*, (1970) 254 Ind. 156, 258 N.E.2d 628; *Irwin v. State*, (1942) 220 Ind. 228, 41 N.E.2d 809, overruled on other grounds; *State v. Lindsey*, (1952) 231 Ind. 126, 106 N.E.2d 230. A waiver of the public trial right occurs, for example, whenever the accused pleads guilty. It is this public trial right of the accused which is intended to insure that the public may see that the accused is fairly dealt with, and it is for his benefit that the right is recognized. A "trial" for these purposes is considered to be the actual trial by jury upon the issue of guilt or innocence. *Reed v. State, supra*. This Court has concluded that the public

trial right is not violated by the exclusion of the public during the testimony of a single witness during an actual trial, *Hackett v. State*, (1977) 266 Ind. 103, 360 N.E.2d 1000, such limited restrictions being within the trial court's discretion where they are related to a legitimate purpose furthering the integrity of the judicial process and are supported by a sufficient record. In the case at bar, the public trial right of the accused has been scrupulously guarded. He concurred in the closure order, and indeed that order is ostensibly intended to protect his right to a later public trial by an impartial jury in Porter County.

■ In *Gannett*, the Supreme Court assumed arguendo, that the public and press have a right to access to pre–trial hearings in criminal proceedings by reason of the First Amendment. That amendment is binding upon Indiana. *Gitlow v. New York*, (1925) 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138. We take the same stance with regard to the First Amendment and to Art. I, § 9, of the Indiana Constitution which guarantees the right to speak, write, or print freely, Art. I, § 12, which requires all courts to be open, Ind.Code § 35–1.1–2–1, which requires criminal actions to be tried publicly, and the common law of Indiana as well. Several limitations appear in this record which warrant this approach. Relators contend that relator Kingsbury was in court when the closure order was first made and that he objected to it. There is no court record of this event before us. However, relator Kingsbury has filed an affidavit setting forth an objection to closure which he claims to have been read to the court at the time the court ordered closure. Respondent has not challenged the accuracy of this affidavit. Nevertheless the procedure completing a trial court record is not satisfactory. Furthermore, the consideration of Indiana authorities construing the above state constitutional provisions and statute in any context is limited on both sides and nonadversarial. There is, for example, indication in but a few cases examined that the requirement of Art. I, § 12, that the courts be open may refer to being open to the injured for legal redress, *Gallup v. Schmidt*, (1900) 154 Ind. 196, 56 N.E. 443; *Dodd v. Reese*, (1940) 216 Ind. 449, 24 N.E.2d 995, and not to openness in the sense of being open to observation by the public and press.

Upon this stance we examine the decision of Judge McLaughlin to close the hearing upon the defendant's motion to be let to bail to the press and public, without first conducting a hearing affording relators an opportunity to appear by counsel and marshall arguments against closure. Relators contend that the closure order was not valid because it was not preceded by a discrete hearing upon their objection to it. We do not read the *Gannett* opinions as creating a per se rule requiring such a hearing. We read the opinions comprising the majority view of the court as requiring trial courts to give "all appropriate deference" to the assumed right of access and that a hearing prior to ordering closure is to be favored and is to be the norm, but not that the hearing is mandatory under all conceivable circumstances. Relators contend that they made an objection to closure in the courtroom, unlike the situation considered in *Gannett*, and that the presence of this objection made the hearing prior to closure mandatory. As pointed out above, the record of the trial court before us is not satisfactory in evidencing an objection to closure. It does not disclose for example that the judge was aware that an objection was made. Nevertheless, we believe that an objection of this sort is to be considered as a circumstance strongly supporting the necessity of a precedent hearing. Circumstances can and do arise in court, even when an objection to closure is made, where the holding of a hearing will vitiate critical interests of the courts, the public, the prosecuting party, and the constitutional rights of the accused. When they do, as they did in this case, closure without a precedent hearing at which the public and press are heard to argue against closure may be consistent with the right to access.

■ In the case before us circumstances clearly show that the values to be protected by a precedent hearing on closure were

actually provided a protection commensurate with that which would have been provided by a hearing, and that the delay occasioned by a hearing on closure would have denied or impinged upon several fundamental rights of the accused. The judge was in the courtroom in the presence of spectators, witnesses and others having business with the court, and publicly announced that he was going to close the courtroom. In doing so, he explained what the hearing was about and why he was ordering the courtroom cleared for it. He spoke thusly:

"THE COURT: We're ready to proceed on the Motion to be Let to Bail.

"Now, something to say to all of you in the audience. Really, for most instances, a Motion to be Let to Bail is not what it says. For most instances it's an economical and speedy way of finding out what all the evidence is in the trial.

"Now, because under the law to prevail on that motion the defense must bring in all the witnesses of the State and try to show to the Court that the evidence against the defendant is not strong or the presumption great.

"Now, obviously, to do that the Court must hear all the evidence that will be presented at trial.

"Now, we are at a rather strong position in this trial in that the trial is set for just three weeks from now. The jurors or prospective jurors are all on a panel and they know who they are. So as a practical matter, everytime there is anything said by the news media, be it radio, television or in the press, those prospective jurors, knowing that they will be or might be jurors on this particular trial, will immediately hone in on that particular thing and soak it in their mind.

"Now, obviously, if any of you are going to be a juror in the trial three weeks from now and you had heard, prior to coming in here, all the evidence that you are going to hear at the trial, you would have already made up your mind. So for that reason, even though I complimented the news media, at this point for that reason we cannot let the general public and prospective jurors know what the evidence is going to be in three weeks or we'll never get a jury. So for that reason the Court will hold the next motion out of the presence of the general public.

"So if everyone other than the defendant, counsels and court personnel will leave the courtroom I will appreciate it and will thank you for your cooperation.

"Anybody that's been subpoenaed as a witness you will need to stay just outside the room.

"Now, Mr. Graddick, does the defense have any objection to this proceeding the Court has just outlined?

"MR. GRADDICK: No, sir, none whatsoever.

"THE COURT: State have any objection?

"MR. GARRIOTT: State has no objection.

"THE COURT: Alright, anyone you feel you need in here to help you with this particular portion of the trial? That doesn't mean witnesses, but otherwise if you state their name for the record you can have them in.

"Do you have anybody?

"MR. GRADDICK: No, sir.

"THE COURT: Does the State have anybody?

"MR. GARRIOTT: Other than present.

"THE COURT: Okay. Fine. Call your first witness.

"MR. GRADDICK: Before we do, in light of the statements that you made before, before you make a ruling on the Petition to be Let to Bail will you require, at least, statements from those whom we've stipulated not to call?

"THE COURT: No. That's up to you to call whomever you want to call. My basic thing for the general public was to explain to them what normally came and as to why this procedure was necessary. But I'm not telling you—in fact you don't have to call any witnesses at all. You can call whomever you wish, and by my statement neither side should take any ruling from that at all.

"MR. GRADDICK: I'm ready for my first witness, Your Honor."

After the closed hearing was concluded the judge made his decision public. Here then, those excluded from the courtroom, knew exactly what was to take place in the closed hearing and the reason the court had for closing it. After the hearing was concluded the content of the hearing was reaffirmed to be that which had previously been announced, in the decision of the judge. This was forthright conduct on the part of the judge, and was in keeping with the trust reposed in the judiciary.

It must be apparent to all from this record that the dynamics of this situation were against excluding the public and press from the hearing. The judge was solicitous of the accused, the prosecution and the interests of the public. He was responding to the teaching of the law and our long tradition that proceedings in criminal cases are to be conducted in a courtroom open to the public. He did in fact give consideration to the interest of the public and the press before arriving at his decision to close the courtroom, and manifested that consideration clearly when he spoke in open court and told those present of his decision and the reason for it.

The day after the closure order was made relators filed their formal written objection to closure based upon the failure of the trial court to hold a precedent hearing. In that objection relators stated that there were alternative methods and procedures to insure the fairness of the forthcoming criminal trial on the charge of murder, but suggested only one, namely, a change of venue from the county. To date, and even upon inquiry by this Court at our hearing on relator's petition, no other procedure satisfying the purpose of closure has been suggested. It is evident from the judge's statement quoted above and the circumstances of this case, that Judge McLaughlin gave due regard to the use of a change of venue as an alternative to closure before ordering the hearing closed. Indeed further demonstration of this fact was provided by the judge, when two days later, he made a new, more formal order of closure, and provided more explicit justification for it. That order appears as follows:

"STATE OF INDIANA,

Plaintiff

VS.

TODREI SANDERS,

Defendant.

### ORDER

"The Court now strikes its ruling on the petition heretofore filed by the Post Tribune Publishing Company and its reporter; said ruling having been made on April 15, 1980, at 1:30 p. m. Pursuant to paragraph 9 of said petition, the Court now reconsiders its ruling.

"The Court again takes judicial knowledge of its record, of the Motion for Change of Venue hearing concluded immediately before the closure order, and finds the following facts exist and existed on April 14, 1980:

"1. The present hearing is on a pretrial motion.

"2. Said motion is a Petition To Be Let To Bail. To be successful on said motion, the defendant, among other things, must introduce all of the evidence against defendant.

"3. On April 14, 1980, the Defense and the State both agreed with the Court that a closed hearing was the only way to obtain a fair trial and approved of the record made of the closure proceeding. Knowing there would be adverse publicity caused thereby, and in an effort to remove the effects of said adverse publicity from both sides, the Court made the closure order as its own motion.

"4. From morning into the afternoon of April 14, 1980, the Court heard Defendant's Motion for Change of Venue from the County. In this hearing were introduced voluminous newspaper articles from this petitioner and another newspaper covering the inception of the incident, the search for defendant, extradition proceedings, quotes from the Prosecution, quotes from the then defense counsel, Change of Judge proceedings, campus in-

terviews and many other items. Most all articles carried a reprint of what had happened and who did it. Evidence showed numerous radio broadcasts.

"5. The defendant is black and the deceased is white. The news reporter testified they made interviews regarding whether or not this is a race killing and printed results of said interviews.

"6. Newspaper representatives testified that the papers were read by nearly every family in Porter County.

"7. The trial of this cause is set for Monday, May 5, 1980, which is less than three weeks away and has so been published.

"8. The panel of prospective jurors for the April–May–June quarter has been drawn, the individual jurors have answered questionnaires and many have already been into Court. The jurors know they are the panel for the cases set in May.

"9. Seventeen and one–half years experience on the bench has taught this Judge that individuals, after knowing themselves to be jurors, read more articles about the cases to come to trial during their term, and they retain more of what they read. Some jurors even bring into the Courtroom newspaper articles written after the individual knows himself to be a prospective juror.

"10. This pre–trial hearing will bring out all of the incriminating evidence against defendant and some statements which will be admissible at this hearing, but not at trial.

"11. After the general public, and especially the prospective jurors, know all of the evidence to be presented at trial and some which would not be admissible, there is no possible way for either the Defendant or the State to have a fair trial. To so proceed would make a farce of this trial and a mockery of the entire legal process.

"12. Closure of the pre–trial evidentiary hearing is the only feasible way for the Court to ensure a fair trial.

"13. Most all of the above facts were found and told to the general public immediately before granting the closure order as shown by a copy of that portion of the transcript attached hereto, made a part hereof and marked Exhibit A.

"14. The timing of these hearings, the proximity of trial, and the particular facts of this case make it fairly unique and not a run of the mill hearing.

"15. The United States Supreme Court has said that it is the obligation and the trial Court has the affirmative constitutional duty to minimize the effects of prejudicial pre–trial publicity and to take steps necessary to ensure a fair trial. The Court has further said that reversals are but palliatives and that the cure lies in the remedial measures that will prevent the prejudice at its inception. At this point a change of venue would deny the Defendant his right to a speedy trial and would necessitate him sitting in jail for more time waiting for trial–a burden for which there is no rectification if he is eventually found innocent.

"16. Balancing all Federal and State Constitutional guarantees, rights and state statutes, which apply in this pre–trial hearing, as suggested by the United States Supreme Court in *Gannett Co. v. DePasquale*, 1979, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608, where all incriminating evidence must be presented, the Judge, as a practical and as a legal matter, must close this pre–trial hearing to the general public in order to ensure a fair trial.

"The Court now also finds that Petitioner's Motion says the Court should have granted a hearing on the question of whether the Defendant was likely to be deprived of a fair trial if the press and the public were permitted to remain in attendance at said hearing. The Court had just finished a four hour hearing wherein the Defendant was introducing evidence to show why he, even at that point, could not have a fair trial in Porter County because of the prior media publicity. The Court taking judicial knowledge of its own records and superimposing them upon the above factual basis, it is

patently obvious that with any more evidence in the hands of prospective jurors, this near to trial, no matter how accurate, a fair trial for Defendant or the State would be impossible. The Court having considered all points raised by Petitioner now finds that the hearing must be closed but a transcript can later be made available.

"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by the Court that the Order Closing the pre–trial hearing on Defendant's Petition To Be Let To Bail is hereby reaffirmed.

"The corporate petitioner and its reporter are granted authority to obtain, immediately upon the swearing of the jury to try this cause, a transcript of all the proceedings had relative to Defendant's Motion To Be Let To Bail.

"Marvin D. McLaughlin /s/

Marvin D. McLaughlin, Special Judge PORTER SUPERIOR COURT"

The formal written objection to closure also presented the assertion that closure had been summarily invoked without determining that such action would not jeopardize the defendant's Sixth Amendment rights to a fair trial. The judge's statement in court quoted above and his more formal justification later made, clearly show that he gave due consideration to the accused's right to a fair trial and the manner in which it might be effected by closure, before clearing the courtroom for the bail hearing. Indeed the judge deemed the closure order necessary to protect the state constitutional right of Sanders to a trial by an impartial jury in Porter County. He likewise took an express waiver from the defendant of any right he might possess to have the let to bail motion heard in an open courtroom.

From the record before us we conclude that the positions which would have been argued to Judge McLaughlin by relators at a hearing on whether to close the let to bail hearing were legal in nature and not fact bound, and were actually considered and determined by the judge before he ordered closure.

It is also to be reasonably inferred from the record before us that the trial court knew that it would have been perilous to have postponed the hearing on the let to bail motion to have permitted the hearing on closure. A delay in the bail hearing would have significantly shortened the time for defense counsel to consider, investigate, and evaluate the knowledge gained at the bail hearing. The trial was already scheduled to take place in about two weeks time. The right of the defendant to defend himself and to have the effective assistance of counsel for doing so would have been impinged upon in event of the delay in holding the bail hearing. There was also a significant probability that a delay in the bail hearing would have necessitated a delay in the trial itself, contrary to the interest of the defendant and the State in a speedy determination of the charges. Rescheduling of the hearing on the motion to be let to bail or the trial itself would have been costly in terms of judicial time, and juror and witness inconvenience and expense, and would have posed special problems long recognized to exist when a special judge has assumed control of a case. *Reed v. State, supra.*

In summation these circumstances indicate that the values which could have been considered and protected at a precedent hearing on closure were in fact considered and protected by the judge before he made his closure decision, and that the disruption of the ongoing proceedings of the case by postponement of the bail hearing would have seriously impinged upon interests of the court, the witnesses, the prospective jurors, and the public and upon fundamental constitutional rights of the accused. Under such conditions, the absence of a hearing prior to closure was not inconsistent with the assumed right of the public and media to access to the pre–trial hearing upon the motion of Sanders to be let to bail.

■ Relators have also raised an issue in regard to the sufficiency of the findings of fact and conclusions of law to support the closure order in their petition. Those findings and conclusions are set forth above in

this opinion. We find however that relators have not carried their burden on this issue at our hearing or in the brief by pointing out wherein these are insufficient.

The writ is denied.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.