### IN RE M–I L.L.C. d/b/a M–I Swaco, Relator

### NO. 14–1045

Supreme Court of Texas.

Argued January 13, 2016

Opinion Delivered: May 20, 2016

Amy Warr, Anna Meredith Baker, Douglas W. Alexander, Wallace B. Jefferson, Alexander Dubose Jefferson & Townsend LLP, Austin, TX, Cody T. Vasut, Edward L. Friedman, Baker & Hostetler LLP, S. Shawn Stephens, King & Spalding LLP, Houston, TX, for Relator.

Elizabeth Pannill Fletcher, John Zavitsanos, Neal A. Sarkar, Ahmad Zavitsanos Anaipakos Alavi & Mensing, P.C., Thomas C. Wright, Bradley Wayne Snead, Wright & Close LLP, Houston TX, for Real Parties in Interest.

JUSTICE DEVINE delivered the opinion of the Court.

In this original mandamus proceeding, we must decide whether the trial court abused its discretion by summarily refusing the plaintiff's request to conduct portions of a temporary injunction hearing involving alleged trade secrets outside the presence of the defendant's designated representative. We must also decide whether the trial court abused its discretion by ordering the production of an affidavit purportedly involving these alleged trade secrets without conducting an *in camera* review of the affidavit. We hold that the trial court abused its discretion in both instances. Because no adequate appellate remedy exists, we conditionally grant mandamus relief against the trial court.

## I. Background

M–I L.L.C. d/b/a M–I Swaco (M–I) and National Oilwell Varco, L.P. (NOV) are competitors providing solid-control equipment and services to the oil-and-gas industry. One aspect of both companies' solid-control business involves mesh screens that filter solid matter, such as drilling cuttings, from drilling fluid. These screens allow expensive drilling fluids to be reused, and thus lower the overall cost of drilling. Both companies have invested heavily in researching, developing, and promoting their respective screens.

In May 2012, Jeff Russo was promoted to business development manager of M–I's

screen division, a sales position in its Denver, Colorado, office. In this position, Russo is alleged to have developed in-depth knowledge of M–I's solid-control business, including M–I's bidding strategies, pricing information, customer preferences, solid-control systems, and deployment strategies.

In February 2014, Russo left M–I and accepted a position in NOV's Conroe, Texas, office as the global product line manager of NOV's screen division. The following month M–I sent Russo a letter stating its belief that he remained in possession of "trade secrets and confidential information" belonging to M–I, which it was "inevitable" he would disclose to NOV. M–I also stated that Russo was in breach of a non-compete agreement he executed when he joined M–I and demanded that he "remove [him]self from any position of employment or job duties in the same or similar product line, segment, or division at NOV that [he] worked in at M–I." If Russo failed to comply with M–I's demand, M–I stated it would file suit against him and seek a restraining order to protects its interests.

In response to M–I's letter, Russo filed suit, requesting that his non-compete agreement with M–I be declared unenforceable. M–I counterclaimed against Russo for breach of the non-compete agreement, breach of fiduciary duty, misappropriation of trade secrets, and tortious interference. M–I also asserted third-party claims against NOV for misappropriation of trade secrets and tortious interference. M–I sought both declaratory and injunctive relief.

At an August 8, 2014, hearing on M–I's application for a temporary injunction, M–I sought to establish its trade secrets through the oral testimony of LaTosha Moore, the global business line manager of its screens division. M–I requested that everyone, except the parties' counsel, their experts, and Russo be excluded from the courtroom. The trial court denied M–I's request, finding that the exclusion of NOV's designated representative, Federico Mezzatesta, would be a "total violation of due process." The trial court did, however, state that it would order Mezzatesta not to disclose or use any trade secrets he heard.

Concerned about disclosing Moore's testimony to Mezzatesta, M–I asked that the hearing be recessed so it could petition the court of appeals for a writ of mandamus. The trial court agreed to the requested recess and asked M–I to make an offer of proof, with Mezzatesta absent, to create a record for the court of appeals. After NOV suggested that the offer of proof could be accomplished by affidavit, however, the trial court instructed M–I to "submit whatever you have."

With the temporary injunction hearing recessed, M–I filed a petition for writ of mandamus in the court of appeals. As an offer of proof, M–I submitted *in camera* to the court of appeals (not the trial court) an affidavit from Moore detailing the testimony she was prepared to offer at the temporary injunction hearing. Russo and NOV objected to the affidavit as an ex parte communication and moved for access to it in the court of appeals. On November 4, 2014, the court of appeals denied their motion for access, along with M–I's mandamus petition. *See In re M–I, L.L.C.*, No. 14–14–00705–CV, 2014 WL 5591575 (Tex.App.—Houston [14th Dist.] Nov. 4, 2014) (mem.op.) (orig.proceeding).

That same day, Russo and NOV moved the trial court to compel M–I to produce the Moore affidavit they submitted *in camera* to the court of appeals, arguing it was a discoverable witness statement under Texas Rule of Civil Procedure 194.2. On November 11, 2014, the trial court

heard Russo and NOV's motion and ordered the affidavit disclosed without reviewing it. M–I then petitioned this Court for mandamus relief challenging (1) the trial court's refusal to exclude Mezzatesta from the temporary injunction hearing, and (2) the trial court's order to disclose the Moore affidavit. Shortly thereafter, M–I moved this Court to seal the Moore affidavit, which this Court granted over NOV's opposition. NOV subsequently filed a motion to strike portions of the mandamus record, including the Moore affidavit, and an emergency motion for access to the affidavit. On December 18, 2015, this Court denied NOV's emergency motion for access without resolving NOV's motion to strike.

## II. Scope of Review

■■■ Mandamus relief is available when two conditions are met. First, the trial court abuses its discretion. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). Second, no adequate appellate remedy exists. *Id.* In this case, we have no dispute that the second condition is satisfied because no adequate appellate remedy exists for an erroneous order to disclose a trade secret. *See In re Colonial Pipeline, Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig. proceeding). Accordingly, our review is limited to considering whether the trial court abused its discretion.

■■■ To constitute an abuse of discretion, the trial court's decision must be "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding)). Thus, in an abuse-of-discretion challenge, "the reviewing court may not substi-

tute its judgment for that of the trial court," *id.* at 839, but instead must only consider whether the trial court "acted without reference to any guiding rules and principles," *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court "has no 'discretion' in determining what the law is or applying the law to the facts," even when the law is unsettled. *Walker*, 827 S.W.2d at 840. "A clear failure by the trial court to analyze or apply the law correctly," therefore, constitutes an abuse of discretion. *Id.*

■■■ In determining whether a trial court abused its discretion, a reviewing court is generally bound by the record before the trial court at the time its decision was made. *See Univ. of Tex. v. Morris*, 162 Tex. 60, 344 S.W.2d 426, 429 (1961). Because portions of the record were not before the trial court when its decisions were made, they will not be considered by this Court in determining whether the trial court abused its discretion. *See id.* Accordingly, we grant NOV's motion to strike these portions of the mandamus record.

## III. Analysis

### A. Refusal to Exclude NOV's Designated Representative

M–I challenges the trial court's refusal to conduct portions of the temporary injunction hearing involving alleged trade secrets outside the presence of Mezzatesta, NOV's designated representative. The trial court declined to exclude Mezzatesta from the temporary injunction hearing on the grounds that it would be "a total violation of due process." Accordingly, our analysis begins with the U.S. Constitution's Fourteenth Amendment Due Process Clause.[1]

---

1. The Texas Constitution, in contrast to the United States Constitution, guarantees "due

### 1. Fourteenth Amendment Due Process

The Fourteenth Amendment Due Process Clause guarantees that states shall not deprive a "person"[2] of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment Due Process Clause does not, however, specify what process is "due" to a person by a state under any given circumstance. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). That depends on "the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

When the government functions as adjudicator of dueling private interests, as it does in this case, three competing factors are balanced to determine what process is due: (1) "the private interest that will be affected by the official action," *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *id.*; and (3) "the interest of the [opposing] party ... with ... due regard for any ancillary interest the government may have in providing the procedure or forgoing the added

burden of providing greater protections," *Connecticut v. Doehr*, 501 U.S. 1, 11, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991).

In effect, "the plaintiff's interest [is placed] on the scale opposite considerations of the vulnerability of the defendant's interest, in a context where there is a presumptively greater weight [given] to the interests of the [parties] in avoiding summary deprivation and in having an opportunity to participate in the decision-making process prior to any official action." Linda Beale, *Connecticut v. Doehr and Procedural Due Process Values: The Sniadach Tetrad Revisited*, 79 Cornell L. Rev. 1603, 1646 (1994) (footnotes omitted) (internal quotation marks omitted). Because of the presumption in favor of participation, due process ordinarily will preclude courts from excluding parties or their representatives from proceedings, at least when they are able to understand the proceedings and to assist counsel in the presentation of the case. *See Helminski v. Ayerst Lab., Div. of Am. Home Prods. Corp.*, 766 F.2d 208, 217 (6th Cir.1985). However, courts have discretion to exclude parties and their representatives in limited circumstances when countervailing interests overcome this presumption. *See id.*

In the present case, this balancing required the trial court to determine the degree of competitive harm M–I would have suffered from the dissemination of its alleged trade secrets to Mezzatesta.[3] *See*

course of law." Tex. Const. art. 1, § 19. The parties do not separately address this provision of the Texas Constitution and, therefore, neither do we.

**2.** Limited liability companies and limited partnerships like M–I and NOV may sue and be sued in their own name, and thus like corporations are treated as "persons" for purposes of the Fourteenth Amendment Due Process Clause. *See, e.g., Grosjean v. Am. Press.*

*Co.*, 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936).

**3.** At this preliminary stage, the trial court need not determine that the information is, in fact, a trade secret. *See Ctr. For Econ. Justice v. Am. Ins. Ass'n*, 39 S.W.3d 337, 343 (Tex. App.—Austin 2001, no pet.). Rather, the trial court need only ascertain whether the information is entitled to trade-secret protection until the trial on the merits. *Id.* Obviously, though, the trial court's finding of potential

*Garcia v. Peeples,* 734 S.W.2d 343, 348 (Tex.1987) (orig.proceeding) (requiring court to consider harm to party's proprietary interest before restricting dissemination of trade secrets). To make this determination, the trial court needed to consider the relative value of M–I's alleged trade secrets, as well as whether Mezzatasta acts as a competitive decision-maker at NOV. *See id.* at 348 n. 4 (recognizing a trade secret is "valuable only because [competitors] lack access to it"). If Mezzatesta does, disclosure of M–I's alleged trade secrets to him would necessarily entail greater competitive harm because, even when acting in good faith, Mezzatesta could not resist acting on what he may learn. *See id.; see also FTC v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C.Cir.1980) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.").

■ This balancing also required the trial court to determine the degree to which NOV's defense of M–I's claims would be impaired by Mezzatesta's exclusion. *See Garcia,* 734 S.W.2d at 348 (requiring court to consider whether trade secrets allowed party "to more effectively prepare for trial" before restricting dissemination). To make this determination, the trial court again needed to consider Mezzatesta's role at NOV, and particularly whether, by virtue of that role, he possessed specialized expertise that would not have been available to NOV's outside experts. *See id.; see also Bussing v. COR Clearing, LLC,* No. 8:12CV238, 2015 WL 4077993, at *3 (D.Neb. July 6, 2015). The trial court also needed to consider the preliminary stage of the proceedings. The function of a preliminary injunction is to maintain the status quo rather than adjudicate the matter on the merits. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002); *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993).

The record before us is clear that the trial court did not balance the competing interests. Without even hearing Moore's testimony identifying M–I's alleged trade secrets, the trial court concluded: "You sued them. They stay, period." Without knowing what M–I's alleged trade secrets were, the trial court simply could not have conducted the required balancing.[4]

■ The trial court apparently believed NOV had an absolute due process right to have its designated representative present at the temporary injunction hearing. However, the due—process right of a party to be present at a civil trial—much less the right of a party to have a designated representative present at a temporary–injunction hearing—is not absolute. *See Air Prods. & Chems., Inc. v. Johnson,* 296 Pa.Super. 405, 442 A.2d 1114, 1116, 1129 (1982) (affirming exclusion of the defendant from hearing involving alleged trade secret over due process objection); *see also Helminski,* 766 F.2d at 213. Instead, the right is qualified and appropriately analyzed under the due–process balancing discussed above. *See Helminski,* 766 F.2d

---

harm to M–I will be directly related to M–I's ability to show it will be entitled to trade secret protection upon a trial on the merits.

4. To decide the preliminary question of whether Mezzatesta could be excluded from the temporary injunction hearing, the trial court could have conducted an *in camera* hearing with Mezzatesta absent or ordered the parties to provide affidavits for its *in camera* inspection. While this evidence would necessarily overlap to some extent with the evidence at the preliminary injunction hearing, it was necessary for the trial court to consider this evidence *before* deciding whether to exclude Mezzatesta from the temporary injunction hearing.

at 213 ("We believe that the extent of a civil litigant's right to be present at trial is appropriately analyzed under the due process clause....").

If the trial court conducted the required balancing, it may have been within its discretion to decide that due process required NOV's designated representative to be present. However, the trial court was required, at a minimum, to conduct that balancing. By failing to do so, the trial court abused its discretion. *See Garcia,* 734 S.W.2d at 348 (finding trial court abused its discretion by not balancing competing interests before resolving dispute over dissemination of alleged trade secrets).

### 2. Texas Law

Relying on an analogy to the Star Chamber,[5] NOV argues that the trial court did not abuse its discretion by failing to balance the competing interests because the exclusion of its designated representative from portions of the temporary-injunction hearing would be inconsistent with various parts of Texas constitutional, statutory, and common law. In turn, we address, and ultimately reject, each of NOV's arguments under Texas law.

### a. Open Courts

NOV first argues that exclusion of its designated representative would violate the Texas Constitution's "open–courts" provision. Tex. Const. art. 1, § 13. That provision states that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." *Id.* While NOV's position is not entirely clear, it appears to interpret the clause "all courts shall be open" as guaranteeing a right of public access to court proceedings, which Mezzatesta was entitled to exercise.

In the absence of any convincing argument or citation to any authority by NOV, we question whether the open–courts provision does, in fact, guarantee such a right of public access, and whether NOV would have standing to assert such a right if it existed, as it would ostensibly belong to Mezzatesta personally as a member of the public, not to NOV as an entity.[6] We do not, however, need to resolve these thorny matters to reject NOV's argument that the open courts provision of the Texas Constitution provided a basis for the trial court to summarily refuse M–I's request to exclude Mezzatesta from portions of the temporary injunction hearing involving alleged trade secrets.

To the extent the open-courts provision might confer a right of public access,

---

**5.** The Star Chamber was "[a]n English court having broad civil and criminal jurisdiction at the king's discretion and noted for its secretive, arbitrary, and oppressive procedures, including compulsory self-incrimination, inquisitorial investigation, and the absence of juries." Black's Law Dictionary 1626 (10th ed.2014).

**6.** While there is some evidence to suggest that the clause guaranteeing "open courts" was originally understood to establish a right of public access to court proceedings, *see* John Bouvier, A Law Dictionary Adapted to the Constitution and Laws of the United States of America (Philadelphia, Childs & Peterson 8th ed., rev., improved and greatly enl. 1859)

(interpreting "open court" as used in "the constitution of some states" to mean "free access is admitted in courts to all persons who have a desire to enter there, while it can be done without creating disorder"), this Court has traditionally interpreted that clause in light of the following clause as merely requiring courts to be in operation and available for redressing injury. *See, e.g., Trinity River Auth. v. URS Consultants, Inc.–Tex.,* 889 S.W.2d 259, 261 (Tex.1994). At least a few states have interpreted their constitutions similarly. *See State ex rel. Post–Tribune Pub. Co. v. Porter Superior Court,* 274 Ind. 408, 412 N.E.2d 748, 751 (1980); *C. v. C.,* 320 A.2d 717, 728 (Del.1974).

this right clearly would not be absolute, but instead would be subject to reasonable limitations imposed to protect countervailing interests, such as the preservation of trade secrets. *See Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 515 S.E.2d 675, 693 (1999) (recognizing "qualified right of access" secured by open courts provision of state constitution is not "absolute" and is subject to "reasonable limitations imposed in the interest of the fair administration of justice or for other compelling public purposes"); *State ex rel. The Repository, Div. Of Thompson Newspapers, Inc. v. Unger*, 28 Ohio St.3d 418, 504 N.E.2d 37, 39–40 (1986) (same); *State ex rel. Herald Mail Co. v. Hamilton*, 165 W.Va. 103, 267 S.E.2d 544, 548 (1980) (same); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 600 n. 5, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (Stewart, J., concurring) ("The preservation of trade secrets, for example, might justify the exclusion of the public from at least some segments of a civil trial."). Thus, even if NOV is correct that the open–courts provision did confer a right on it to have its designated representative present, the trial court still abused its discretion by summarily refusing M–I's request without balancing the competing interests.

### b. The Rule

NOV next asserts that the exclusion of its designated representative would violate "the Rule." *See* Tex. R. Civ. P. 267(a) (defining "placing witnesses under the rule" as the process of swearing in the witnesses and removing them from the courtroom, where they cannot hear the testimony of any other witness); *see also* Tex. R. Evid. 614. The Rule provides that trial courts "shall" exclude witnesses upon the request of a party. Tex. R. Civ. P. 267(a). However, three classes of witnesses are exempt from the operation of the Rule, including "an officer or employee of a party that is not a natural person and who is designated as its representative by its attorney." *Id.*(b).

While NOV is correct to recognize that Mezzatesta, as its designated representative, would not have been subject to mandatory exclusion had M–I invoked the Rule, M–I did not rely on the Rule to exclude Mezzatesta. Rather, it relied upon the Texas Uniform Trade Secrets Act. *See* Tex. Civ. Prac. & Rem. Code §§ 134A.001–.008. The Rule's exemption for designated representatives does not apply to the Trade Secrets Act, as that exemption is expressly limited to "[t]his rule." Tex. R. Civ. P. 267(b); *see also* Tex. R. Evid. 614.

For its part, the Trade Secrets Act requires trial courts to take reasonable measures to protect trade secrets and creates a presumption in favor of granting protective orders to preserve the secrecy of trade secrets, which may include provisions for, among other things, "holding in camera hearings." Tex. Civ. Prac. & Rem. Code § 134A.006. The Act unfortunately does not take the trouble to define "in camera hearings," and the parties offer competing interpretations. NOV asserts that "in camera hearings" refers simply to proceedings closed to the general public, while M–I asserts that "in camera hearings" also refers to proceedings in which a party or its representatives (but not its attorneys) are excluded. Specifically, NOV asserts that, when a trade secret is known to all parties, an *in camera* hearing involves the exclusion of everyone "except the parties, both of whom must already know the secret, and their counsel, who must have been apprised thereof." *Taylor Iron & Steel Co. v. Nichols*, 73 N.J. Eq. 684, 69 A. 186, 188 (N.J. Ct. Err. & App. 1908). However, NOV asserts that when "a third person, to whom the secret has not yet been disclosed, is a party," an *in*

*camera* hearing implies that "he may well be excluded without injustice." *Id.* We agree with M–I's interpretation, because it best gives effect to Act's directive to take reasonable measures to protect trade secrets, and its express authorization for protective orders with provisions "limiting access to confidential information to only the attorneys and their experts." Tex. Civ. Prac. & Rem. Code § 134A.006. We, therefore, conclude that the Act granted the trial court discretion to exclude Mezzatesta from portions of the temporary injunction hearing involving alleged trade secret information about which he was potentially unaware.

### c. Rule 76a

 NOV also asserts that exclusion of its designated representative would be inconsistent with Texas Rule of Civil Procedure 76a. By its express terms, however, Rule 76a only governs the sealing of "court records." It does not implicate oral testimony, and thus does not apply to M–I's request to exclude Mezzatesta from portions of the temporary injunction hearing.

### d. Offensive Use

NOV lastly asserts that M–I forfeited its right to use the trade-secret privilege as a "shield" to exclude its designated representative from portions of the temporary injunction hearing involving trade secrets by using those same trade secrets as a "sword" in pursuing its misappropriation claim. We have previously recognized that certain privileges may be waived by offensive use, but have limited such waiver to instances where a party attempts to protect outcome–determinative information from any discovery. *See Tex. Dep't of Pub. Safety Officers Ass'n v. Denton,* 897 S.W.2d 757, 760–61 (Tex.1995) (the self-incrimination privilege); *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 164 (Tex.1993) (orig.proceeding) (the attorney-client privilege); *Owens–Corning Fiberglas Corp. v.*

*Caldwell,* 818 S.W.2d 749, 752 (Tex.1991) (orig.proceeding) (the work-product privilege); *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 107–08 (Tex.1985) (orig.proceeding) (the physician-patient privilege). Here, M–I concedes that its trade secrets are discoverable—it simply disputes whether Mezzatesta, as an alleged competitive decision-maker, is entitled to learn its trade secrets during the temporary injunction hearing. The offensive-use doctrine does not decide that question. *See Denton,* 897 S.W.2d at 761 (holding that a plaintiff engages in offensive use when it attempts to "protect *from discovery* outcome determinative information") (emphasis added). Balancing the competing interests does.

## B. Disclosure of the Moore Affidavit

 The Moore affidavit was never submitted to the trial court. It was instead submitted directly to the court of appeals for *in camera* review. Nonetheless, the trial court ordered the Moore affidavit produced over M–I's assertions that it contained trade secret information. Because the Moore affidavit itself was the only evidence that could substantiate whether it did, in fact, contain trade secrets, the trial court had no choice but to review it *in camera* before ruling on whether to produce it over M–I's assertion that it contained trade secrets. *See Weisel Enters., Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986) (per curiam) (orig.proceeding) (recognizing that, when allegedly privileged documents are the only evidence to substantiate the claim of privilege, the trial court must review them *in camera* ). The trial court abused its discretion in failing to do so. *Id.*

The trial court apparently believed that, even if the Moore affidavit did contain trade secrets, its disclosure was necessary

to prevent " injustice." TEX. R. EVID. 507(a) (providing that a party has a privilege to refuse to disclose its trade secrets "if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice"). How the trial court would have been justified in making that determination without knowing what the Moore affidavit contained is not clear. But even if it was, the trial court still had an obligation to review the Moore affidavit before ordering it disclosed to determine which "protective measures [were] required by the interests of the privilege holder and the parties." *Id.*(c). Without knowing what the Moore affidavit contained, the trial court could not have possibly known how M–I's interests would be affected by its disclosure—particularly, to Mezzatesta—and consequently what protective measures were required.

### IV. Conclusion

The trial court abused its discretion when it concluded that the exclusion of NOV's designated representative from portions of the preliminary injunction hearing involving alleged trade secrets would violate due process without balancing the competing interests at stake. *See Garcia*, 734 S.W.2d at 348. The application of this balancing necessarily entails factual determinations based on a fully developed record, which this Court cannot resolve in this original mandamus proceeding. *See Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714–15 (Tex. 1990) (orig.proceeding). Accordingly, we conditionally issue the writ of mandamus directing the trial court to conduct the required balancing.

The trial court also abused its discretion when it ordered the Moore affidavit disclosed without reviewing it *in camera*. Accordingly, we conditionally issue the writ of mandamus directing the trial court to withdraw that order.

The actual writs will only issue if the trial court fails to comply with this opinion.