

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-19-00202-CV

---

IN RE TREATMENT EQUIPMENT COMPANY, JANICE V. SMITH, AND
BRUCE S. SMITH, Relators

---

Original Proceeding
Trial Court No. PR-2014-00697-01

---

Before Pittman, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In this original proceeding, relators Janice V. Smith, Bruce S. Smith, and Treatment Equipment Company (TEC) seek mandamus relief from an order compelling production of documents that the real party in interest first requested in a motion to compel instead of in a formal request for production. Because the trial court abused its discretion by ordering relators to respond to discovery that was not properly requested, we conditionally grant relief and order the trial court to vacate part of its June 3, 2019 order.

## II. BACKGROUND

Janice and Bruce Smith own TEC, a corporation that sells and services water treatment equipment. Michael Kilborn began working for TEC in 1986 as a salesperson. He worked for the corporation in this capacity until his death in August 2014. During Kilborn's employment, TEC paid him fifty percent of its profits from his sales upon the occurrence of certain "milestones," such as the equipment's actual delivery. Thus, Kilborn often did not receive his earned commissions until "months or even years after the commission was actually earned." TEC and Kilborn never signed a written employment agreement memorializing how his commissions were to be paid.

After Kilborn's death, on September 11, 2014, real party in interest Phillip E. Romero, the independent executor of Kilborn's estate, emailed Janice, asking about

the terms of Kilborn's commission arrangement. According to Romero, just two weeks later, on September 24, 2014, TEC informed at least one of its clients that it was "beginning the process of winding down" its operations and "would not be pursuing new sales" beginning October 31, 2014.[1]

On July 30, 2018, Romero, in his capacity as the independent executor of Kilborn's estate, sued TEC and the Smiths individually for breach of contract and fraud. Romero alleged that TEC and both Smiths had breached Kilborn's oral employment agreement with TEC by failing to pay all of his earned commissions. Additionally, Romero alleged, in a section of the petition entitled "FRAUD/PIERCING OF THE CORPORATE VEIL," that TEC and the Smiths committed fraud by making promises to Kilborn about "the manner and means" by which his commissions would be payable, "knowing they would not honor the promises." He also alleged that TEC and the Smiths had misrepresented to him as executor the terms of the employment agreement, and what TEC still owed Kilborn, intending to deprive Kilborn's estate of assets. Finally, Romero alleged that the Smiths committed fraud by underfunding TEC, causing TEC to stop selling its goods, or both so that TEC could not meet its financial obligations to Kilborn and other former employees.

---

[1]Romero made this allegation in his response to the mandamus petition, and relators did not dispute it in their reply.

3

During discovery, Romero propounded twenty-three requests for production. Relators provided documents responsive to the first fifteen requests but not the remaining eight requests, five of which are pertinent to this original proceeding:

> **REQUEST FOR PRODUCTION 18.** For the time period January 1, 2012 to present, please produce credit and debit card and bank account statements for all accounts held in the name of or used by Defendants Bruce S. Smith and/or Janice V. Smith or their family members.

> **REQUEST FOR PRODUCTION 19.** For the time period January 1, 2012 to present, please produce detailed expense ledgers or reports showing all expenses incurred by or reimbursed to Defendants Bruce S. Smith and/or Janice V. Smith or their family members.

> **REQUEST FOR PRODUCTION 20.** For the time period January 1, 2012 to present, please produce Account Analysis for Defendants Bruce S. Smith and/or Janice V. Smith or their family members.

> **REQUEST FOR PRODUCTION 21.** For the time period January 1, 2012 to present, please produce copies of checks or records/reports of all monies taken from a TEC [sic] or petty cash by Defendants Bruce S. Smith and/or Janice V. Smith or their family members.

> **REQUEST FOR PRODUCTION 22.** For the time period January 1, 2012 to present, please produce any and all vehicles[2] owned or leased by TEC and used by Defendants Bruce S. Smith and/or Janice V. Smith or their family members.

Relators raised the same objection in response to all five of these requests:

> **OBJECTION(S):** Defendants object to this Request on relevance grounds, as it seeks countless documents immaterial to the

---

[2]From the context of the mandamus record, it appears that Romero intended to seek supporting documents for any vehicles owned or leased by TEC rather than a physical inspection of the vehicles themselves.

4

claims and defenses asserted in this lawsuit. Defendants further object to this Request as overly broad and unduly burdensome, as the Request is not reasonably limited in time or scope to documents which could possibly evidence Plaintiff's entitlement to recover damages in this lawsuit. Defendants further object to this Request as unduly harassing and an impermissible fishing expedition.

On May 14, 2019, Romero filed a motion to compel discovery, in which he alleged that relators had not timely responded to requests 18 through 22. But he did not ask the trial court to compel relators to produce documents in response to those requests. Explaining that he had "suggested" to relators that they "begin with production of the TEC bank and credit card statements and expand to other documents," he instead asked the trial court to compel production of the following documents that he claimed are pertinent to "the Smiths' use of company assets to pay for personal expenses":

• Monthly TEC bank and credit card statements[;]

• Expense reports and/or receipts for travel made by the Smiths or their family members and paid for or reimbursed by TEC[;]

• Expense reports and/or receipts for all matters characterized as "Meetings and seminars" (or the like) by Defendants on TEC tax returns and Profit and Loss Statements, attended by the Smiths or their family members and paid for or reimbursed by TEC[;]

• Expense reports and/or receipts for all matters characterized as "Meals and entertainment" (or the like) by Defendants on TEC tax returns and Profit and Loss Statements, attended by the Smiths or their family members and paid for or reimbursed by TEC[;]

• Expense reports and/or receipts for all matters characterized as "Dues," "Dues and Subscriptions" and/or "Club Dues" (or the like) by Defendants on TEC tax returns and Profit and Loss Statements,

5

incurred by the Smiths or their family members and paid for or reimbursed by TEC[;]

• Expense reports and/or receipts for all matters characterized as "Charitable contributions" (or the like) by Defendants on TEC tax returns and Profit and Loss Statements, made by or on behalf of the Smiths or their family members and paid for or reimbursed by TEC[;]

. . . .

• Invoices, receipts or other documentation of payments made for vehicles owned, leased or otherwise subsidized (such as through car allowances) by TEC and used by the Smiths or their family members[;]

• Invoices, receipts or other documentation of payments made for health insurance coverage for the Smiths or their family members[; and]

• Invoices, receipts or other documentation of payments made for mobile phones, personal computers or other personal electronic devices used by the Smiths or their family members and paid for or reimbursed by TEC.

Romero characterized these requests, which we will refer to as the Compelled Requests, as "a more specific subset of documents." In addition to seeking an order compelling relators to produce the Compelled Requests, Romero sought attorney's fees under Rules 215.1(d) and 215.2(b) of the rules of civil procedure. Tex. R. Civ. P. 215.1(d), 215.2(b).

In their response to the motion, relators (1) characterized the Compelled Requests as "new categories of documents," (2) argued that compelling responses to those requests would be impermissible because they had not yet had the opportunity to object to them, and (3) generally objected to the Compelled Requests "on relevance grounds, as overly broad, unduly burdensome, unduly harassing, and as an

6

impermissible fishing expedition." According to relators, the documents sought in the Compelled Requests would be relevant only if Romero obtained a judgment against TEC that TEC then attempted to avoid paying. Relators also withdrew their objection to request 22 and answered that "no responsive documents exist."

After a June 3, 2019 hearing at which the trial court only heard argument from counsel, the trial court signed an order (1) granting Romero's motion to compel "in toto," (2) ordering relators to respond to the Compelled Requests within forty-five days, (3) overruling relators' objections to requests 18 through 22, and (4) awarding Romero $1,750 in attorney's fees. Relators then filed this petition for writ of mandamus, asking this court to order the trial judge to vacate her order on the motion to compel in its entirety.

Relators argue in their petition for writ of mandamus that the trial court abused its discretion by ordering them to produce documents responsive to the Compelled Requests because (1) Romero never properly served them with the Compelled Requests under the rules of civil procedure,[3] (2) none of the documents sought in the Compelled Requests are relevant to Romero's suit, which they contend is "a

---

[3]In the hearing on Romero's motion to compel, relators' counsel argued primarily that the Compelled Requests sought irrelevant information, but he also told the trial judge that the Compelled Requests were not "subsets of the original request[s] for production." He also pointed out that relators had not been given an opportunity to object to the "new categories," particularly the request seeking production of TEC bank and credit card statements. Further, he pointed out that the Smiths did not have their family members' bank account statements "in their possession."

7

straightforward claim for breach of contract," and (3) requiring them to produce responses to the Compelled Requests would violate their privacy interests.

## III. DISCUSSION

### A. Standard of Review

This court may grant mandamus relief from a discovery order only when (1) the trial court's decision is so arbitrary and unreasonable that it amounts to "a clear and prejudicial error of law" and (2) the relator has no adequate remedy by appeal. *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding) (quoting *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)).

In determining whether the trial court abused its discretion, we may not substitute our judgment for the trial court's determination of factual or other discretionary matters. *Id.* But because a trial court has no discretion in determining what the law is or applying the law to even unsettled facts, we review its decisions on questions of law and application-of-law-to-facts questions much less deferentially. *Id.* A trial court abuses its discretion by clearly failing to correctly analyze or apply the law. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding).

The scope of discovery is generally within the trial court's discretion so long as a discovery order does not exceed what the rules of civil procedure permit. *See* Tex. R. Civ. P. 192.4; *State Farm Lloyds*, 520 S.W.3d at 604; *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). To be discoverable, evidence must be relevant and nonprivileged, but it need not be admissible if it is reasonably calculated

8

to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a); *In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 808 (Tex. 2017) (orig. proceeding). Thus, although the permitted scope of discovery is generally broad, a discovery request "must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *Nat'l Lloyds*, 532 S.W.3d at 808 (quoting *CSX*, 124 S.W.3d at 152).

Even when a trial court abuses its discretion in making a discovery ruling, we will not intervene if the relator has an adequate remedy by appeal. *In re Prudential Ins. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). Appeal is inadequate when a discovery order compels production "beyond the rules of [civil] procedure." *In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (quoting *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding)).

## B. Procedure for Propounding, and Compelling Answers to, Requests for Production

The rules of civil procedure provide that a party may serve requests for production of documents on another party. *See* Tex. R. Civ. P. 196.1(a). The rules also dictate the contents of those requests: they "must specify the items to be produced" and describe each item "with reasonable particularity." Tex. R. Civ. P. 196.1(b). Additionally, proper requests for production must "specify a reasonable time (on or after the date on which the response is due) and place for production." *Id.* The responding party has at least thirty days to either object or assert a privilege to the requests or to answer them. Tex. R. Civ. P. 196.2(b). "Subject to any objections

9

stated in the response, the responding party must produce" only those requested documents within the responding party's "possession, custody[,] or control." Tex. R. Civ. P. 196.3(a). Under Rule 215.1(b)(3)(C), the trial court may compel a party to answer a request for production only if the party has failed to serve a written response "after proper service of the request." Tex. R. Civ. P. 215.1(b)(3)(C).

"[A]n essential prerequisite to filing a motion to compel production (or for sanctions) is that another party has failed to permit discovery as requested in response to a request submitted under TRCP 196." *In re Methodist Primary Care Grp.*, 553 S.W.3d 709, 721 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) (quoting *In re Lowe's Cos.*, 134 S.W.3d 876, 880 n.7 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding)). Thus, a trial court cannot compel a party to produce an item that the party has not properly been requested to produce. *Methodist Primary Care*, 553 S.W.3d at 721; *Lowe's Cos.*, 134 S.W.3d at 880 n.7.

## C.  Trial Court's Order Beyond Bounds of Rule 215.1(b)(3)(C)

### 1.  Romero Did Not Properly Serve Compelled Requests

Here, Romero never included the Compelled Requests in a request for production complying with Rule 196.1. Tex. R. Civ. P. 196.1(a), (b). The first time Romero sought the Compelled Requests was in the motion to compel. In that motion, he did not specify a time and place for production. *See* Tex. R. Civ. P. 196.1(b). Additionally, relators did not have at least thirty days to object, assert privileges, or respond: Romero filed his motion to compel on May 14, 2019, and the

10

trial court held its hearing only twenty days later, on June 3, 2019. Because Romero did not properly serve relators with the Compelled Requests under Rule 196.1, the trial court did not have the authority to compel relators to respond to them under Rule 215.1(b)(3)(C). The trial court thus abused its discretion by ordering relators to respond to the Compelled Requests.[4] *See Methodist Primary Care*, 553 S.W.3d at 721–22; *Lowe's Cos.*, 134 SW.3d at 880 n.7; *cf. In re TIG Ins.*, 172 S.W.3d 160, 168 (Tex. App.—Beaumont 2005, orig. proceeding) ("The burden to propound discovery complying with the rules of discovery should be on the party propounding the discovery . . . ."); *In re Sears, Roebuck & Co.*, 123 S.W.3d 573, 574–78 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (noting that "the rules of procedure do not contemplate oral discovery requests").

---

[4]The order also appears to be beyond the scope of the trial court's intent. At the conclusion of the hearing, the trial judge stated, "[T]he way I read it [the proposed order], . . . the turnover is for just TEC records, TEC bank statements, credit cards, travel receipts[,] and expense reports, invoices. It does not go into the [Smiths'] personal credit cards or their family members' credit cards or personal cards." But the Compelled Requests do not limit the production of expense reports, invoices, receipts, account analyses, and other documentation related to TEC's reimbursement of the Smiths and their family members to only TEC's records. Those requests could conceivably extend to the Smiths' or their family members' personal records evidencing the types of reimbursements described. *See* Tex. R. Civ. P. 205.1(d) (requiring party to serve a subpoena to obtain documents from a nonparty if the party has not obtained a court order under Rules 196.7, 202, or 204). Indeed, the order compels TEC and the Smiths to produce all of the items listed in the Compelled Requests. Thus, even if Romero had properly sought the Compelled Requests, the order appears to be beyond the scope of the trial judge's stated intent on the record.

11

## 2. Trial Court Could not Have Ordered Responses to Compelled Requests as "Subsets" of Requests 18 Through 22

Romero contends that the Compelled Requests were not "new requests" but "a more narrowly tailored subset of" requests 18 through 22. We do not agree. Romero argues as an example that the Compelled Request for TEC's bank and credit card statements is included within the scope of request 18. But request 18 asked for credit card, debit card, and bank account statements "for all accounts held in the name of or used by" the Smiths or their family members, not TEC accounts. And expense reports, receipts, and invoices, as sought in the Compelled Requests, are not items that would be included in the Smiths' or their family members' credit card, debit card, or bank account statements, nor TEC's.

Requests 19 and 20—seeking "detailed expense ledgers or reports showing all expenses incurred by or reimbursed to" the Smiths or their family members and undefined "Account Analysis"[5] for the Smiths or their family members—do not specifically seek documents related to TEC; rather, they appear to seek documents related to any type of expenses or income of the Smiths or their family members, whether or not related to TEC. Thus, even if the Compelled Requests seeking supporting documents for travel, meetings and seminars, meals and entertainment,

---

[5]The mandamus record does not include a copy of the original requests for production; we have only relators' response to the requests, which does not contain any definitions or instructions which may have been included. *See* Tex. R. App. P. 52.4(e), 52.7(b).

dues, charitable contributions, vehicles,[6] health insurance, and devices could be considered a subset of requests 19 and 20, requests 19 and 20 themselves do not comply with Rule 196.1 because they do not "specify the items to be produced . . . with reasonable particularity." Tex. R. Civ. P. 196.1(b). For that reason, the trial court would have abused its discretion by ordering relators to respond to those two requests if it had done so. *See id.*; *In re Premcor Refining Grp., Inc.*, No. 09-09-00222-CV, 2009 WL 2253290, at *4 (Tex. App.—Beaumont July 30, 2009, orig. proceeding) (mem. op.).

Finally, request 21, which seeks "copies of checks or records/reports of all monies taken from a TEC [sic] or petty cash" by the Smiths or their family members, suffers from the same lack of specificity as requests 19 through 20. *See id.* Furthermore, checks, records, and reports would not necessarily show the purpose for which the Smiths or their family members may have "taken [monies] from" TEC in general or TEC's petty cash. Thus, Romero did not show that the Compelled Requests sought a subset of items listed in request 21.

Accordingly, the trial court could not have properly ordered relators to respond to the Compelled Requests as a narrowly tailored subset of requests 18 through 22. *Cf. Sears, Roebuck & Co.*, 123 S.W.3d at 577–78 (observing that "the trial court should

---

[6]To the extent that request 22 can be construed as seeking supporting documentation regarding vehicles owned or leased by TEC, relators withdrew their objection and answered that no responsive documents exist. Thus, they did not "fail to serve a written response" to request 22 as required by Rule 215.1(b)(3)(C).

have recognized the plaintiffs' concessions and 'clarifications' [seeking narrower discovery at motion to compel hearings] for what they were—a recognition that their requests were overbroad"). *But cf. In re Brookshire Grocery Co.*, No. 12-06-00065-CV, 2006 WL 2036569, at * 2–3 (Tex. App.—Tyler July 21, 2016, orig. proceeding) (mem. op.) (distinguishing *Sears* and holding trial court did not abuse its discretion by implicitly sustaining most of resisting party's objection to overbroad request for production and ordering production of the same types of items requested (i.e., a narrower subset) but only at the time of the slip and fall that was the subject of the suit).

### 3.  Trial Court Abused its Discretion by Overruling Objections to Requests 18 Through 22

The trial court's order also overrules relators' objections to Romero's original requests 18 through 22 even though Romero did not seek that relief in his motion to compel or at the hearing, and even though relators had withdrawn their objection to request 22 and responded to that request. *See* Tex. R. Civ. P. 193.4(a). When a trial court overrules a party's discovery objections, that party "must produce the requested material or information within 30 days after the trial court's ruling or at such time as the court orders." Tex. R. Civ. P. 193.4(b). Because Romero did not seek a ruling on relators' objections to requests 18 through 22, we hold that the trial court abused its discretion by overruling relators' objections to those requests. *See TIG Ins.*, 172 S.W.3d at 170–71 (holding that whether attorney work product privilege applied

14

to discovery request was not properly before the trial court on motion to compel, in part because motion to compel and related hearing notice did not indicate that privilege was to be a subject of the hearing and no party addressed that subject at the hearing).

### 4. Attorney's Fees Award Not Reviewable in Mandamus Proceeding

Although relators ask this court to vacate the trial court's order in its entirely, they do not specifically challenge the award of attorney's fees in accordance with Rules 215.1(d) and 215.2(b)(8). Tex. R. Civ. P. 215.1(d), 215.2(b)(8). Moreover, these types of sanctions generally are not subject to mandamus review because they are "subject to review on appeal from the final judgment." Tex. R. Civ. P. 215.1(d), 215.2(b)(8). Accordingly, we do not grant relief from this part of the trial court's order because relators have an adequate remedy by appeal. *See* Tex. R. Civ. P. 215.1(d), 215.2(b)(8); *In re Smith*, No. 2-07-327-CV, 2007 WL 3205185, at \*5–6 (Tex. App.—Fort Worth Oct. 30, 2007, orig. proceeding) (mem. op.); *see also Nat'l Lloyds*, 507 S.W.3d at 226 (declining to grant mandamus relief but directing trial court to review appropriateness of attorney's fees award after erroneous grant of motion to compel).

## IV. CONCLUSION

Because we hold that the trial court abused its discretion by ordering relators to respond to requests for production that were not propounded in accordance with the rules of civil procedure and by overruling relators' objections to requests for

15

production 18 through 22, and because appeal is an inadequate remedy when a trial court orders discovery outside the bounds of the rules of civil procedure, we conditionally grant the relief requested in relators' petition for writ of mandamus. We order the trial court to vacate the parts of its June 3, 2019 order (1) ordering relators to respond to the Compelled Requests and (2) overruling relators' objections to Romero's requests for production 18 through 22. *See* Tex. R. App. P. 52.8(c). We are confident that the trial court will comply; therefore, we will not issue a writ unless the trial court refuses to comply with our order.

Our June 24, 2019 order staying the trial court's June 3, 2019 order remains in effect until the trial court complies with our order. When the trial court does so, the stay will lift and our June 24, 2019 order will have no further effect.

/s/ Dana Womack

Dana Womack
Justice

Delivered: July 23, 2019

16