# NO. 12-20-00210-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: MATTHEW BERRYMAN* | § | |
| *AND TABITHA BERRYMAN,* | § | *ORIGINAL PROCEEDING* |
| *RELATORS* | § | |

## *OPINION*

Matthew and Tabitha Berryman filed this original proceeding to challenge Respondent's order in aid of investigation of child abuse or neglect.[1]  We conditionally grant the writ.

## BACKGROUND

The Berrymans are the parents of eight children, including an infant named E.B.  In August 2020, the Texas Department of Family and Protective Services (the Department) filed a petition for order in aid of investigation of a report of child abuse or neglect, which alleged that the Department received a report of child abuse or neglect on August 17 and there is probable cause to expeditiously conduct an investigation to ensure the children's safety and welfare. According to the affidavit of the Department's representative, Jessica Tullberg, the Department received an intake alleging physical abuse of an infant.  Specifically, E.B. was heard crying inside a closed closet in the Berrymans' home.  The reporter alleged that Tabitha placed E.B. on the floor of the closet, instead of in a crib or infant seat, and E.B. "cried excessively" until falling asleep.  The reporter stated that four or five siblings were in the home, as well as a grandmother or other adult caregiver, who observed E.B. in the closet but did not remove her from the closet. Tullberg spoke to the reporter, who confirmed the details of the intake.

---

[1] Respondent is the Honorable Tim Womack, Judge of the 307th District Court in Gregg County, Texas. The Texas Department of Family and Protective Services is the Real Party in Interest.  The Texas Public Policy Foundation (the Foundation) filed an amicus brief in support of the Berrymans' petition for writ of mandamus.

On August 17, Tullberg went to the Berrymans' home. When she knocked on the door, a "young female" peered through the glass door and informed Tullberg that Tabitha was resting. Tullberg identified herself and requested that Tabitha be asked to come to the door. Approximately ten minutes later, Tullberg again knocked on the door. Tabitha, who was on the telephone with her attorney, came to the door. She told Tullberg that E.B. does not sleep in a "little closet" but sleeps in a walk-in-closet, which she called a "spare bedroom," and she denied the closet being inappropriate. Tullberg asked to see E.B. and the sleeping arrangements. Tabitha went inside to consult with her attorney and thereafter returned with E.B. She told Tullberg that E.B. has proper sleeping arrangements and is not being left in the closet. She allowed Tullberg to observe E.B., who wore only a diaper. Tullberg stated that E.B. appeared clean and healthy, with no visible physical injuries. Tullberg stated that she still needed to see the home environment and interview all the children, but Tabitha declined to allow Tullberg inside or agree to further interviews without speaking to Matthew. Tullberg advised Tabitha that she could not "ensure, nor appropriately assess, the children's safety as the home environment and interviews with the children are crucial pieces." Tabitha tentatively agreed to a time for Tullberg to return to the residence, but later cancelled so she could discuss with Matthew and agreed to contact Tullberg with a time to return to the residence.

On August 18, Tullberg called the Berrymans and left a message. That same day, she received a letter from the Berrymans' attorney, which requested that the Department close its case, as there was sufficient information to determine that the allegations are unfounded and no further contact with the family appeared necessary. The letter stated that E.B. was not left in a closet; rather, a large walk in closet had been converted into a nursery. The letter further stated that Tabitha voluntarily met with Tullberg, allowed Tullberg to inspect the baby, and the "mere allegation that a child is left in a closet is not necessarily a reasonable belief that a child is subject to abuse and neglect."

In her affidavit, Tullberg stated that she had been unable to conduct even basic investigatory tasks to ensure the children's safety. Based on the Barrymans' failure to cooperate with the investigation into allegations of abuse and neglect, Tullberg was concerned about the risk to their children's safety. Accordingly, the Department's petition alleged that it had been unable to conduct a thorough investigation because it had been unable to obtain consent, i.e., consent was denied, to enter the children's home, school, or other location for purposes of

2

interview, examination, or investigation. The Department sought an ex parte order (1) authorizing a Department representative to have immediate access to E.B. and the unknown children and to enter the children's home, school, or other location for an interview with the children, and observation of the premises and immediate surroundings where the children are located or where the alleged abuse or neglect occurred; and (2) authorizing a Department representative to transport the children for an interview relating to the investigation.

On August 21, Respondent signed an order finding that the Department has probable cause to conduct an investigation and there is good cause for the Department to have investigatory access to the children and to enter the home for an interview with the children, and observation of the premises and immediate surroundings where the children are located or where the alleged abuse or neglect occurred and to transport the children for an interview relating to the investigation.[2] In accordance with these findings, the order authorized the Department's representative to have investigatory access and to enter the children's home for an interview and observation, and to transport the children for an interview. The Berrymans were served with citation on August 27.

The Berrymans filed their mandamus petition with this Court on August 31. We granted their request for emergency relief, and stayed the August 21 order pending resolution of this proceeding.

## PREREQUISITES TO MANDAMUS

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). A writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). The relator has the burden of establishing both of these prerequisites. *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding.). "Mandamus will not issue when the law provides

---

[2] The Department filed its petition on August 24, 2020, but Respondent signed the challenged order on August 21. The Berrymans and the Foundation take issue with this discrepancy. The Department explains that the petition and ex parte order were left with the court coordinator on August 21 because Respondent was on the bench, the court coordinator contacted the assigned attorney on August 24, and the clerk's office accepted the petition, affidavit, and order on August 26. An e-filing print out reflects that the documents were filed on August 24 and accepted on August 26. Apparently, Respondent signed the order and only then were all the documents filed and accepted. The Department states that this procedure is common practice as to ex parte orders. We have no reason to doubt the Department's representations regarding the filing date being three days after the order was signed.

another plain, adequate, and complete remedy." ***In re Tex. Dep't of Family & Protective Servs.***, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding).

An order in aid of investigation is a temporary order. *See **In re Tex. Dep't of Family & Protective Servs.***, 255 S.W.3d 613, 615 (Tex. 2008) (orig. proceeding). Mandamus is an appropriate remedy because the trial court's issuance of a temporary order is not subject to interlocutory appeal. *See **In re Derzapf***, 219 S.W.3d 327, 335 (Tex. 2007) (orig. proceeding); *see also **In re Salminen***, 492 S.W.3d 31, 38 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding); *see also **B.H. v. Tex. Dep't of Family & Protective Servs.***, No. 03-18-00101-CV, 2018 WL 1220897, at *1 (Tex. App.—Austin Mar. 9, 2018, no pet.) (mem. op.) (dismissing appeal from order in aid of investigation for want of jurisdiction); ***In re S.D.***, No. 09-11-00192-CV, 2011 WL 2581914, at *1 (Tex. App.—Beaumont June 30, 2011, no pet.) (mem. op.) (dismissing appeal from order in aid of investigation for want of jurisdiction); TEX. FAM. CODE ANN. § 105.001(e) (West 2019).

<u>**ABUSE OF DISCRETION**</u>

The Berrymans maintain that Respondent abused his discretion by granting the order in aid of investigation without any basis for the Department's belief that E.B. suffered abuse or neglect and without probable cause to enter the home and seize any of their children for interviews. The Texas Public Policy Foundation (the Foundation) filed an amicus brief in support of the Berrymans.[3] The Foundation argues that (1) Respondent abused his discretion by failing to apply the fit parent presumption; (2) Section 261.303 of the family code is unconstitutionally void for vagueness; (3) Respondent violated the Berrymans' due process rights by issuing the order without first affording them notice and a meaningful opportunity to respond; and (4) the order exceeds statutory authority by empowering the Department to transport the children to a different location for purposes of furthering the investigation.

**<u>Applicable Law</u>**

With assistance from the appropriate state or local law enforcement agency, the Department shall make a prompt and thorough investigation of a report of child abuse or neglect allegedly committed by a person responsible for a child's care, custody, or welfare. TEX. FAM.

---

[3] According to the amicus brief, the Foundation is a "non-profit, nonpartisan research organization dedicated to promoting liberty, personal responsibility, and free enterprise through academically sound research and outreach."

CODE ANN. § 261.301(a) (West 2020); *In re E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013). If a parent or other person refuses to cooperate with the Department's investigation of the alleged abuse or neglect of a child and the refusal poses a risk to the child's safety, the Department shall seek assistance from the appropriate attorney with responsibility for representing the Department to obtain a court order pursuant to Section 261.303. TEX. FAM. CODE ANN. § 261.3031(a) (West 2020). Under Section 261.303, if admission to the home, school, or any place where the child may be cannot be obtained, then for good cause shown the court having family law jurisdiction shall order the parent, the person responsible for the care of the children, or the person in charge of any place where the child may be to allow entrance for the interview, examination, and investigation. *Id*. § 261.303(b). "Good cause" constitutes a "legally sufficient reason" and is "often the burden placed on a litigant…to show why a request should be granted or an action excused." BLACK'S LAW DICTIONARY 235 (8th ed. 2004); *In re M.C.F.*, 121 S.W.3d 891, 896 (Tex. App.—Fort Worth 2003, no pet.). A trial court has discretion to determine good cause, and that determination can only be set aside if the trial court abused its discretion. *M.C.F.*, 121 S.W.3d at 896.

A trial court abuses its discretion when it makes a decision that is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding). We will not substitute our judgment for that of the trial court but must consider whether the trial court acted without reference to guiding rules and principles. *Id*. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id*. A clear failure by the trial court to correctly analyze or apply the law constitutes an abuse of discretion. *Id*.

## Abuse or Neglect

We first address the Berrymans' contention that Tullberg's affidavit fails to allege facts that would amount to good cause that E.B. was a potential victim of abuse or neglect and, as a result, there was no basis for Respondent to grant the order. The Department responds, "It is reasonable to assume that the intake reported to the Department was true once the Department investigator was able to corroborate a critical portion of the initial intake report." According to the Department, "The cause for concern remains for the Department investigator to complete the necessary task to determine the safety of the children in the environment, and the Department presented the reasons for the trial court to consider the good cause in this matter." The

5

Department further maintains, "It is not unreasonable to assume that entrance to the home could lead to discovery of neglect stated in [the] intake report."

Chapter 261 of the Texas Family Code provides a broadly defined and nonexclusive list of acts or omissions that constitute "abuse" and "neglect" when investigating reports of child abuse or neglect. *In re S.M.R.*, 434 S.W.3d 576, 583 (Tex. 2014); *E.C.R.*, 402 S.W.3d at 246. "Both definitions give examples of abusive or neglectful conduct, and both definitions explicitly include risk[.]" *E.C.R.*, 402 S.W.3d at 246. Pertinent to this case, "abuse" includes the following acts or omissions:

> (A) mental or emotional injury to a child that results in an observable and material impairment in the child's growth, development, or psychological functioning;
> (B) causing or permitting the child to be in a situation in which the child sustains a mental or emotional injury that results in an observable and material impairment in the child's growth, development, or psychological functioning;
> (C) physical injury that results in substantial harm to the child, or the genuine threat of substantial harm from physical injury to the child, including an injury that is at variance with the history or explanation given and excluding an accident or reasonable discipline by a parent, guardian, or managing or possessory conservator that does not expose the child to a substantial risk of harm;
> (D) failure to make a reasonable effort to prevent an action by another person that results in physical injury that results in substantial harm to the child[.]

TEX. FAM. CODE ANN. § 261.001(1)(A)-(D) (West 2020).[4] "Neglect" includes the following pertinent acts or omissions:

> (i) the leaving of a child in a situation where the child would be exposed to a substantial risk of physical or mental harm, without arranging for necessary care for the child, and the demonstration of an intent not to return by a parent, guardian, or managing or possessory conservator of the child;
>
> …
>
> (a) placing a child in or failing to remove a child from a situation that a reasonable person would realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities and that results in bodily injury or a substantial risk of immediate harm to the child;
>
> …
>
> (c) the failure to provide a child with food, clothing, or shelter necessary to sustain the life or health of the child, excluding failure caused primarily by financial inability unless relief services had been offered and refused[.]

---

[4] Section 261.001(1)(E)-(M) refers to child abuse involving sexual conduct, pornography, trafficking, use of a controlled substance, or forcing a child into marriage. *See* TEX. FAM. CODE ANN. § 261.001(1)(E)-(M) (West 2020).

*Id.* § 261.001(4)(A)(i), (ii)(a), (c).[5]

Here, the allegations that serve as the basis for Respondent's order are that on August 17, the Department received a report of physical abuse to an infant (E.B.), i.e., the "infant child had been heard crying inside a closet with the door shut in the residence." Rather than being placed in a crib or infant seat, E.B. was placed on the closet floor where she cried "excessively" until falling asleep. That same day, Tabitha told Tullberg that E.B. sleeps in a walk-in closet or "spare bedroom," had "proper sleeping arrangements," and was not being left in the closet. Although Tabitha did not allow Tullberg inside the home, she brought E.B. outside and Tullberg observed that E.B. had no visible physical injuries and appeared clean and healthy. In a subsequent letter to Tullberg, the Berrymans' attorney further explained that the master bedroom walk-in closet had been converted into a nursery and was equipped with baby monitors. Tullberg stated in her affidavit that she had been unable to "conduct even basic investigation tasks to ensure the safety of the children" and she had "concerns that there is a risk to the Berryman children's safety based upon the failure to cooperate with the investigations into the allegations of neglect and abuse[.]" Tullberg classified the report as a Priority One intake.

We first take issue with designation of the report as a Priority One. A Priority One report "concern[s] children who appear to face an immediate risk of abuse or neglect that could result in *death or serious harm*." 40 TEX. ADMIN. CODE ANN. § 707.485(a)(1) (emphasis added); § 707.451(a)(17) ("Risk of child abuse or neglect--a reasonable likelihood that in the foreseeable future there will be an occurrence of child abuse or neglect as defined in Texas Family Code (TFC) §261.001"). Tullberg did not explain how Tabitha's alleged actions give rise to a conclusion that E.B. faced an immediate risk of abuse or neglect that *could result in death or serious harm*. And Tullberg's affidavit sets forth absolutely no facts regarding the Berrymans' other children, abusive, neglectful, or otherwise.

Nor do Tabitha's alleged actions, standing alone, meet the definitions of abuse or neglect. It is not uncommon for a parent to place a baby on the floor to play or nap.[6] Nor is it uncommon

---

[5] The remainder of Section 261.001(4) refers to the failure to provide medical care, exposure to a substantial risk of sexual conduct, exposure to acts or omissions under Section 261.001(1)(E)-(H) and (K), failure to arrange for necessary care when the child has been absent from the home, and negligent acts or omissions by someone working under the auspices of a facility or program. *See id.* § 261.001(4)(A)(ii)(b), (d), (e), (iii), (iv).

[6] In "Safe Sleep for Babies: A Community Training," created by a committee composed of staff from the Texas Departments of State Health Services and Family and Protective Services, a note to the trainer states, "You

for a parent to allow an infant to cry herself to sleep, which is a known method of sleep training.[7] And it is certainly not beyond the realm of reasonableness that a parent might convert a closet into a nursery, albeit a small one. That the Department, or the trial court, may disapprove is insufficient to overcome a parent's fundamental right to make decisions regarding her children's care, custody, and control. *See **Troxel v. Granville***, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). There must be more to justify governmental intrusion into the family unit.

The conclusory allegations in Tullberg's affidavit fail to create such a justification. The facts set forth in Tullberg's affidavit do not allege any mental or emotional injury that may result in an observable and material impairment in E.B.'s growth, development, or psychological functioning, much less any act that caused or permitted E.B. to be in a situation in which she sustained such an injury that resulted in an observable and material impairment in her growth, development, or psychological functioning. *See* TEX. FAM. CODE ANN. § 261.001(1)(A)-(B). Nor did Tullberg allege facts suggesting physical injury that resulted in substantial harm to E.B., or the genuine threat of substantial harm from physical injury to E.B. *See id.* § 261.001(1)(D)-(C). Tullberg offered no explanation as to why E.B. would be exposed to a substantial risk of physical or mental harm, why a reasonable person would realize that the situation in which E.B. was placed results in bodily injury or a substantial risk of immediate harm to E.B., or how the alleged actions constituted a failure to provide E.B. with food, clothing, or shelter necessary to sustain E.B.'s life or health. ***Id***. § 261.001(4)(A)(i), (ii)(a), (c). Again, Tullberg's affidavit was completely silent as to any allegations of abuse or neglect concerning the other children in the home. Tullberg expressly cited the Berrymans' "failure to cooperate" as the basis for her concern regarding a risk to the children's safety. But she offered no explanation as to why the alleged failure to cooperate posed a risk to the safety of any of the Berryman children. *See* TEX. FAM. CODE ANN. § 261.3031(a) (if parent or other person refuses to cooperate with investigation of alleged abuse or neglect *and the refusal poses a risk to the child's safety*, the Department shall seek assistance to obtain a court order pursuant to Section 261.303). Without more, the conclusory assertions in Tullberg's affidavit do not allege sufficient facts from which

---

can let parents know that if there are no other options, the best place for their baby to sleep is on a thin mat or blanket on a clean and cleared off space on the floor." https://www.dshs.texas.gov/pdf/FINAL_Training_Guide.pdf.

[7] "Information for Parents of Newborns," created by the Department of State Health Services, includes the following advice: "If you are feeling frustrated by your baby's crying, put the baby in a safe place and leave the room. *Let your baby cry alone for 10 to 15 minutes*." https://www.dshs.state.tx.us/mch/pdf/Info_for_Parents_FINAL_English.pdf (emphasis added).

Respondent could reasonably conclude that abuse or neglect had potentially occurred as contemplated by the Texas Family Code.

And while we recognize that the definitions of abuse and neglect may encompass conduct in addition to that statutorily defined, we will not extend those definitions so broadly as to encourage governmental overreach. *See City of Fort Worth v. Rylie*, 602 S.W.3d 459, 468 (Tex. 2020) ("Courts must construe statutes to avoid constitutional infirmities"). "[S]o long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68-69, 120 S. Ct. at 2061. Due process does not permit a State to infringe on a parent's fundamental right to make child rearing decisions simply because a state judge believes a "better" decision could be made. *Id.*, 530 U.S. at 72-73, 120 S. Ct. at 2064. The "State may *legitimately interfere* with family autonomy to protect children from *genuine* abuse and neglect by parents who are unfit to discharge the 'high duty' of 'broad parental authority over minor children.'" *Interest of A.M.*, No. 18-0905, 2019 WL 5275657, at *1 (Tex. Oct. 18, 2019) (Blacklock, J., concurring in denial of pet.) (quoting *Parham v. J.R.*, 442 U.S. 584, 602, 99 S. Ct. 2493, 2504, 61 L. Ed. 2d 101 (1979)) (emphasis added). The State's responsibility to protect children from abusive parents does not authorize the State to oversee the internal affairs of every family. *Id.* "The statist notion that governmental power should supersede parental authority in *all* cases because *some* parents abuse and neglect children is repugnant to American tradition." *Id.* (quoting *Parham*, 442 U.S. at 603, 99 S. Ct. at 2504). Absent a sufficient supporting affidavit, an order in aid of investigation of child abuse or neglect does not authorize a legitimate interference with family autonomy for purposes of protecting children from genuine abuse or neglect. To conclude otherwise would subject a parent's fundamental right to the care, custody, and control of her children to potential arbitrary governmental interference for any conduct or decision with which the government may disagree or of which it may disapprove.

Accordingly, under the facts of this case, we conclude that Tullberg's affidavit is simply insufficient to support a conclusion of good cause to order that the Berrymans allow entrance for interviews, examination, and investigation.[8] Thus, Respondent abused his discretion by signing

_____

[8] We do note that the order does not appear to track the statute, which allows a trial court to order the *"parent, the person responsible for the care of the children, or the person in charge of any place where the child*

9

an order in aid of investigation. Because we so hold, we need not address the Berrymans' remaining contentions or those raised by the Foundation. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having determined that Respondent abused his discretion by signing the order in aid of investigation, we ***conditionally grant*** the Berrymans' petition for writ of mandamus. We direct Respondent to vacate his August 21, 2020, order in aid of investigation. We trust Respondent will promptly comply with this opinion and order. The writ will issue only if the trial court fails to do so ***within ten days of the date of the opinion and order***. The trial court shall furnish this Court, within the time of compliance with this Court's opinion and order, a certified copy of the order evidencing such compliance. We ***lift*** our stay of September 2, 2020.

JAMES T. WORTHEN
Chief Justice

Opinion delivered October 14, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

*may be*" to allow entrance for the interview, examination, and investigation. TEX. FAM. CODE ANN. § 261.303(b) (West 2020) (emphasis added). Respondent's order authorized the *Department's representative* to have investigatory access and to enter the children's home for an interview and observation. The order also authorized the Department representative to transport the children for an interview. Section 261.302(b)(3) does provide that the interview and examination of the child may include transporting the child for purposes relating to the interview or investigation. *Id.* § 261.302(b)(3) (West 2020). Before the Department may transport the child, the Department shall "attempt to notify the parent or other person having custody of the child of the transport." *Id.* § 261.302(b-1).

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 14, 2020

NO. 12-20-00210-CV

**MATTHEW BERRYMAN AND TABITHA BERRYMAN,**
Relators
V.

**HON. TIM WOMACK,**
Respondent

___

### ORIGINAL PROCEEDING

___

ON THIS DAY came to be heard the petition for writ of mandamus filed by Matthew and Tabitha Berryman; who are the relators in appellate cause number 12-20-00210-CV and respondents in trial court cause number 2020-1515-DR, pending on the docket of the 307th Judicial District Court of Gregg County, Texas. Said petition for writ of mandamus having been filed herein on August 31, 2020, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, **conditionally granted**.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate his order in aid of investigation of child abuse or neglect of August 21, 2020; the writ will not issue unless the **HONORABLE TIM WOMACK** fails to comply with this Court's order within ten (10) days from the date of this order.

James T. Worthen, Chief Justice.

*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*