# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00014-CV

---

**E. N., Appellant**

v.

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-FM-18-007423, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

E.N. (Father) appeals from a final judgment terminating his parental rights to his son, Charles.[1]  He argues that the district court abused its discretion by denying his motion for a continuance until an in-person trial was possible and that insufficient evidence supports the jury's findings.  We will affirm.

## BACKGROUND[2]

Father began a relationship with V.N. (Mother) when he was thirty-four and she was sixteen years old.  Mother moved in with him when she was seventeen and refused to return to her parents' home.  The Department of Family and Protective Services obtained temporary

---

[1] We refer to the child and his relatives by initials or pseudonyms.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b).

[2] We take these facts from the testimony and evidence admitted at trial.

conservatorship over her, but the record reflects no further developments in that case before Mother reached the age of majority. Mother and Father eventually married, and Charles was born in February 2014. Approximately three months after Charles's birth, Father was convicted and incarcerated on federal charges of manufacturing and selling cocaine. Mother, Charles, and John—Charles's half-brother—moved in with Mother's parents (Grandparents).[3]

In July 2018, the Department opened an investigation when police found marijuana in Mother's vehicle during a traffic stop with one of her children present. In the following four months, the Department received additional referrals alleging that Mother had left one of her children in the care of a person smoking marijuana and, on two occasions, injured Charles while disciplining him. Mother was hospitalized for suicidal ideation in November 2018, and the Department obtained temporary custody of Charles and John shortly thereafter. The Department filed this suit affecting the parent-child relationship and sought to terminate the rights of both parents. Charles and John remained in the care of Grandparents.

Mother subsequently executed a mediated settlement agreement consenting to termination of her parental rights so that Grandparents could adopt the children. The district court set the Department's case against Father for a jury trial in December 2020, which was to be conducted by remote videoconference because of the COVID-19 pandemic. Father filed written objections arguing that a remote jury trial violated his due process rights and moved for a continuance until an in-person trial was possible. The district court overruled Father's objections and denied the motion.

---

[3] The district court subsequently determined that Father was not John's parent.

2

Trial began on December 15, 2020, over Father's renewed objections. Father participated by videoconference from a federal penitentiary in South Carolina. The jury heard testimony from the Department caseworker, Grandparents, Charles's counselor, Father, Father's sister (Aunt), and Charles's guardian ad litem. Father denied parentage of John and argued against severing his relationship with Charles. He acknowledged that he will likely be imprisoned until 2025 and agreed that Charles should remain in Grandparents' care. Grandparents testified that they intend to adopt both children if Father's and Mother's rights are terminated. The Department's caseworker and the guardian ad litem testified in support of their plans.

After the close of evidence, the district court granted a directed verdict that Father is not John's parent. The remainder of the case was submitted to the jury. With respect to Charles, the jury found that the Department had proven three predicate grounds for termination and that termination was in Charles's best interest. *See* Tex. Fam. Code § 161.001(b)(1)(E), (N), (Q), (b)(2). Consistent with the settlement agreement, the jury found that the Department had proven that Mother's actions or inactions satisfied one statutory ground for termination with respect to each child and that termination is in the children's best interest. Father timely appealed.

## CONTINUANCE

Father initially argues that the district court abused its discretion by denying his motion for a continuance because a remote jury trial violates his due process rights. The Department responds that there was no abuse of discretion under the circumstances. We agree with the Department.

3

We review the denial of a motion for a continuance for an abuse of discretion. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court "abuses its discretion if it acts without reference to guiding rules and principles such that the ruling is arbitrary or unreasonable." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020). In addition, a trial court abuses its discretion "if it clearly fails to correctly analyze or apply the law." *In re State*, 556 S.W.3d 821, 827 (Tex. 2018) (orig. proceeding) (citing *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding)).

Trial courts may not grant a continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251. Father argues that the law required a continuance here because holding a remote jury trial would violate his due process rights. "Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Mosley v. Texas Health & Human Servs. Comm'n*, 593 S.W.3d 250, 265 (Tex. 2019) (citing *University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995)). We measure what process is due under a "flexible standard" that depends "on the practical requirements of the circumstances." *Id.* In conducting this analysis, we weigh (1) the private interests at stake; (2) the risk of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See id.*; *In re State*, 556 S.W.3d at 829.

At the time the district court set the Department's case for trial, courts were subject to several emergency orders issued by the Supreme Court of Texas regulating court proceedings during the COVID-19 pandemic. The relevant order provided:

4

> [A]ll courts in Texas may in any case, civil or criminal . . . without a participant's consent . . . allow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means[.]"

*Twenty-Sixth Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 135, 135 (Tex. 2020) (order).[4] The order allowed courts to conduct remote jury proceedings under certain circumstances. "In criminal cases where confinement in jail or prison is a potential punishment," remote jury proceedings could "not be conducted without appropriate waivers and consent obtained on the record from the defendant and prosecutor." *Id.* at 137. Remote jury proceedings were permissible "[i]n all other cases" if the court had "considered on the record any objection or motion related to proceeding" with a remote trial. *See id.* at 136–37.

Father argues that due process requires treating parties facing termination of their parental rights the same as those facing loss of liberty. Yet the right of criminal defendants to be physically present stems from the Sixth Amendment's Confrontation Clause, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend VI. The right of confrontation includes "the absolute requirement that a criminal defendant who is threatened with loss of liberty be physically present at all phases of proceedings against him, absent a waiver of that right through defendant's own conduct." *Scott v. State*, 555 S.W.3d 116, 125 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (citing *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985)). The

---

[4] The Twenty-Ninth Order had superseded the Twenty-Sixth Order when trial began on December 15, 2020. *See Twenty-Ninth Emergency Order Regarding COVID-19 State of Disaster*, No. 20-9135, ___ S.W.3d ___, ___, 2020 WL 8881660, at \*2 (Tex. Nov. 11, 2020) (order). We cite to the Twenty-Sixth for convenience because, as relevant here, there is no material difference between the two orders.

Confrontation Clause does not apply to parental-termination cases, which are civil proceedings. *See J.T. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-15-00286-CV, 2015 WL 6459607, at *4 n.4 (Tex. App.—Austin Oct. 23, 2015, no pet.) (mem. op.) (explaining that Sixth Amendment "applies only to 'criminal prosecutions,' and therefore does not apply to parental-rights-termination cases, which are civil proceedings" (internal citation omitted)); *see also In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003) (holding termination does not constitute criminal punishment). Generally, "[t]he due process right of a party to be present at a civil trial . . . is not absolute. Instead, the right is qualified and appropriately analyzed under the due–process balancing" test discussed above. *In re M-I L.L.C.*, 505 S.W.3d 569, 576 (Tex. 2016) (orig. proceeding) (internal citation omitted); *see, e.g., In re Z.L.T.*, 124 S.W.3d 163, 165–66 (Tex. 2003) (explaining how to perform balancing test in context of prison inmates asking to appear in civil proceedings); *In re T.B.*, 594 S.W.3d 773, 776–77 (Tex. App.—Waco 2019, no pet.) (applying same analysis in context of person removed from mental-health commitment proceeding).

However, Father is correct that the private interest at stake in a termination proceeding is entitled to heightened consideration. "A parent's right to the 'companionship, care, custody, and management of his or her children is an interest far more precious than any property right,'" *In re D.S.*, 602 S.W.3d 504, 518 (Tex. 2020) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)), and is "consequently governed by special rules," *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012). Due process requires proof by "clear and convincing evidence" that termination is warranted and in the best interest of the child. *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018); *see also* Tex. Fam. Code § 161.001(b)(1), (2) (codifying clear-and-convincing evidence requirement). "Further, a parent must be permitted to appeal the termination of parental rights, and due process requires that the appeal be meaningful." *In re*

6

*N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). Although due process requires courts to afford "heightened judicial protection" to parental rights, *see In re A.C.*, 560 S.W.3d at 626, those protections generally do not rise to the level of what is required in criminal proceedings. For example, due process does not require application of the "beyond a reasonable doubt" standard of proof, *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) (citing *Santosky*, 455 U.S. at 767–69), or mandate the appointment of counsel for every indigent parent, *see In re K.S.L.*, 538 S.W.3d 107, 112 (Tex. 2017) (citing *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 31 (1981)). Based on these authorities, we decline to hold that due process requires that parents facing termination of their rights must enjoy the same treatment as criminal defendants under the emergency orders.

Our conclusion does not end the inquiry. We now turn to whether, under the circumstances of this case, due process required that Father receive an in-person trial. *Cf. In re B.L.D.*, 113 S.W.3d 340, 354 (Tex. 2003) (holding that due process did not require review of unpreserved error in every case and then conducting "a specific factual inquiry into the circumstances of the parent's case"). The record reflects that this was apparently among the first remote jury trials in the State. Father argues that the difficulties inherent in such a novel proceeding posed too high a risk that his rights would be terminated in error.

"Both the parent and the child have a substantial interest in the accuracy and justice of a decision" in a termination proceeding. *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Similarly, the State's interest in promoting the best interest of the child "is served by procedures that promote an accurate determination of whether the natural parents can and will provide a normal home." *Id.* at 549; *see In re B.L.D.*, 113 S.W.3d at 353. The record does not show that a remote jury proceeding posed such an elevated risk of error. The district courts of Travis County have created uniform procedures for conducting uniform

7

jury trials that addressed the unique concerns posed by remote jury proceedings. District Courts of Travis County, *Travis County District Court Remote Jury Trial Procedures*, *available at* https://www.traviscountytx.gov/images/courts/Docs/remote-jury-trial-procedures-for-lawyers-and-litigants.pdf (last visited June 15, 2021) (Remote Jury Procedures).[5] For example, those procedures require that in the week prior to trial:

- Travis County Constables deliver County-issued iPads to each jury member. Each device is equipped with a mobile hotspot, the Zoom videoconferencing program, the Box application—used for sharing documents—a stand for the device, and a charger.

- Attorneys for all participants receive information on the jury "by 9 am the Friday before trial" but could request a jury shuffle by noon the same day.

- Each party is emailed a link with which to upload pre-marked exhibits and agreed jury questionaries.

*Id.* The procedures further required that, during jury selection and at trial, each panelist stay "visible and centered in their Zoom tiles at all times," keep the video feed on, view the proceeding in a "separate room or space" free from "distractions or interruptions," and be reachable by phone in case of technical difficulties. *Id.* The procedures further mandated that, after jury selection is complete, the trial judge will admonish the jury. *Id.* The rules of civil procedures require that trial judges admonish newly-seated jurors

> to turn off their phones and other electronic devices and not to communicate with anyone through any electronic device while they are in the courtroom or while they are deliberating. The court must also instruct them that, while they are serving as jurors, they must not post any information about the case on the Internet or search for any information outside of the courtroom, including on the Internet, to try to learn more about the case.

---

[5] It is not clear whether this document was in its current form at the time of trial. We cite to it out of convenience because the record reflects that district court's plans for the trial were consistent with the measures outlined in this document.

> If jurors are permitted to separate before they are released from jury duty, either during the trial or after the case is submitted to them, the court must instruct them that it is their duty not to communicate with, or permit themselves to be addressed by, any other person about any subject relating to the case.

Tex. R. Civ. P. 284. The procedures further mandated that, once the trial is underway, the trial court would ensure the panel members were following the admonishments. *See Remote Jury Trial Procedures*; *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam) (noting that "the discretion vested in the trial court over the conduct of a trial is great"). And if, during that trial, a litigant came to believe the jury had committed misconduct or received improper outside communications, he was entitled to move for a new trial on that basis. Tex. R. Civ. P. 327 (providing for motion for new trial alleging "jury misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury").

Father is undoubtedly correct that these procedures do not guarantee a trial free of error or jury misconduct. But, as the presiding judge observed when denying Father's motion, she "could never guarantee that in an in-person trial either." *See Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018) (noting that "a litigant is not entitled to a perfect trial for, indeed, few trials are perfect" (citing *Lorusso v. Members Mut. Ins.*, 603 S.W.2d 818, 819 (Tex. 1980))). Under the circumstances, we conclude that these procedures do not pose such a "risk of an erroneous deprivation" of Father's rights as to weigh in favor of delaying the trial.

Charles also has an interest in securing "a final decision on termination so that adoption to a stable home or return to the parents is not unduly prolonged." *In re M.S.*, 115 S.W.3d at 548; *see Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 513–14 (1982) ("There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents,

9

especially when such uncertainty is prolonged."). Father argues that proceeding with a remote trial does not advance this interest here because Charles's daily life will not change regardless of the results. He testified that he intends for Aunt to act as Charles's caretaker, and Aunt indicated at trial that she would not move Charles from Grandparents' house. Thus, he reasons, there was no reason not to delay the proceedings until an in-person trial might be possible. But the district court had no way of knowing when an in-person trial would be possible. The relevant emergency order allowed in-person jury trials only if the local COVID-19 situation permitted and only once the trial court completed several steps, including obtaining preauthorization from the regional presiding judge, among others. *See Twenty-Sixth Emergency Order*, 609 S.W.3d at 136–37.[6]

Adding to the uncertainty at the time was the statutory dismissal deadline imposed on termination cases. In cases where the Department requests termination of parental rights or conservatorship of a child, the Family Code requires the court to begin trial within one year of appointing the Department as temporary managing conservator. Tex. Fam. Code § 263.401(a). The trial court may extend the deadline once for 180 days upon a finding of "extraordinary circumstances." *Id.* § 263.401(b). The trial court may not grant a second extension, *id.* § 263.401(c), and the parties may not extend the deadline by agreement, *In re Department of Fam. & Protective Servs.*, 273 S.W.3d 637, 643 (Tex. 2009) (orig. proceeding) (citing Tex. Fam. Code § 263.402). In this case, the district court had already granted the sole 180-day extension allowed by statute. However, several of the supreme court's emergency orders allowed courts to grant an additional 180-day extension. *See, e.g.*, *Thirty-Sixth Emergency Order Regarding*

---

[6] The twenty-ninth emergency order—in effect at the time the trial began over Father's renewed objections—contained materially identical requirements. *See Twenty-Ninth Emergency Order*, ___ S.W.3d at ___, 2020 WL 8881660, at *2.

10

*COVID-19 State of Disaster*, No. 21-9026, ___ S.W.3d ___, ___, 2021 WL 866472, at *1 (Tex. Mar. 5, 2021) (order); *Twenty-Ninth Emergency Order Regarding COVID-19 State of Disaster*, No. 20-9135, ___ S.W.3d ___, ___, 2020 WL 8881660, at *1 (Tex. Nov. 11, 2020) (order); *Twenty-Sixth Emergency Order*, 609 S.W.3d at 135. This would theoretically have allowed the district court to extend the case indefinitely by granting an extension under each successive order. But the district court had no way of knowing how long the Supreme Court would continue to authorize additional extensions. Once the authorizations stopped, each of the cases where a court had granted an extension would have to be tried before the automatic dismissal date. This would result, in the district court's estimate, in trying at least thirty parental-rights-termination cases to a jury in that court in an extremely restricted timeframe. Under these circumstances, Charles's interest in securing a prompt decision on the merits supported proceeding with a remote trial. *See Lehman*, 458 U.S. at 513–14; *In re M.S.*, 115 S.W.3d at 548; *see also In re K.S.L.*, 538 S.W.3d at 116 ("[T]he needs of the child are not best served by a legal process that fosters delay[.]").

Balancing the interests of Father, Charles, and the Department in light of the "practical requirements of the circumstances"—conducting court proceedings during the COVID-19 pandemic—we conclude that due process did not require that Father have an in-person trial. *See In re T.B.*, 594 S.W.3d at 778 (holding that removing defendant in mental-health commitment proceeding from courtroom did not violate due process where defendant was disruptive and refused multiple times to follow instructions, and defendant was "removed to an adjacent room where he could see and hear the proceedings"). The district court therefore did not abuse its discretion in denying Father's motion for a continuance. We overrule Father's first issue.

11

## SUFFICIENCY CHALLENGES

Having concluded that the district court did not abuse its discretion in denying a continuance, we turn to whether sufficient evidence supports the verdict.

We first address whether Father preserved error. *See In re G.X.H.*, No. 19-0959, ___ S.W.3d ___, ___, 2021 WL 1704234, at *3 (Tex. Apr. 30, 2021) (noting that, "with limited exceptions, a party cannot obtain reversal of a trial court's judgment on appeal based on an error that was never raised in the trial court"). To preserve a challenge to the legal sufficiency of evidence in a jury trial, a party must: (1) file a motion for instructed verdict, (2) file a motion for judgment notwithstanding the verdict, (3) object to the submission of the issue to the jury, (4) file a motion to disregard the jury's answer to a vital fact issue, or (5) file a motion for new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991); *A.W. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-00048-CV, 2017 WL 3044243, at *2 (Tex. App.—Austin July 14, 2017, no pet.) (mem. op.). To preserve a challenge to the factual sufficiency of the evidence in a jury trial, a party must file a motion for new trial. *See* Tex. R. Civ. P. 324(b)(2) ("A point in a motion for new trial is a prerequisite to the following complaints on appeal . . . A complaint of factual insufficiency of the evidence to support a jury finding . . . ."); *Cecil*, 804 S.W.2d at 510; *In re I.R.K.-N.*, No. 10-13-00455-CV, 2014 WL 2069281, at *3 (Tex. App.—Waco May 15, 2014, pet. denied) (mem. op.). Father did not preserve his factual-sufficiency complaint because he failed to file a motion for new trial. However, Father preserved his legal-sufficiency complaint by objecting to the submission of the entire case to the jury. *See Cecil*, 804 S.W.2d at 510–11.

A court may render judgment terminating the parent-child relationship if it finds by clear and convincing evidence that the parent's acts or omissions satisfy at least one statutory ground for termination and that termination is in the best interest of the child. Tex. Fam. Code

12

§ 161.001(b)(1), (2). "Clear and convincing evidence" is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

The heightened burden of proof in parental termination cases "gives rise to a concomitantly heightened standard of appellate review." *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020) (per curiam). In reviewing for legal sufficiency, a court should look at "all the evidence in the light most favorable to the finding." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Under the clear-and-convincing standard, the reviewing court "cannot ignore undisputed evidence contrary to the finding" but "must otherwise assume the factfinder resolved disputed facts in favor of the finding." *In re A.C.*, 560 S.W.3d at 630–31. Evidence is legally insufficient if, after conducting this review, the reviewing court concludes that "no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true." *In re Z.N.*, 602 S.W.3d at 545 (citing *In re J.F.C.*, 96 S.W.3d at 266).

The jury found that the Department had proven three predicate grounds for termination. *See* Tex. Fam. Code §161.001(b)(1)(E), (N), (Q). We begin our analysis with the Subsection (E) finding because the Supreme Court of Texas has held that allowing subsection "(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue . . . violates the parent's due process and due course of law rights." *In re N.G.*, 577 S.W.3d at 237.[7]

---

[7] We do not interpret the supreme court's holding in *In re N.G.* as requiring us to address Father's unpreserved factual-sufficiency argument. As our sister court observed, the high court's holding that due process requires addressing challenges to a subsection (D) or (E) finding "presupposes that the appellant has preserved the issues for appeal in the first instance" and "does not eliminate[ ] the long-established requirement of error preservation of legal and factual sufficiency issues in parental-rights termination cases decided by a jury." *In re A.P.*,

13

Subsection (E) authorizes termination if a parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(E). Termination under this subsection "must be based on 'a voluntary, deliberate, and conscious course of conduct.'" *J.O. v. Texas Dep't of Fam. & Protective Servs.*, 604 S.W.3d 182, 191 (Tex. App.—Austin 2020, no pet.) (quoting *J.G. v. Texas Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 524 (Tex. App.—Austin 2019, no pet.)). In this context, to "endanger" means "to expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Endangerment requires "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but it is not necessary that the conduct be directed at the child or that the child suffer injury. *Id.*

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009) (citation omitted). "Evidence of a parent's criminal history, convictions, and resulting imprisonment may establish an endangering course of conduct." *J.G.*, 592 S.W.3d at 524. It is undisputed that Father has been incarcerated for criminal conduct on four different occasions. Specifically, he has been convicted of assault, deadly conduct, a state charge of manufacturing and delivering a controlled substance, and federal narcotics charges. His behavior routinely subjected Charles to the possibility he would be left without support. *See In re J.S.*, 584 S.W.3d 622, 635 (Tex. App.—Houston [1st Dist.]

---

No. 05-19-01536-CV, 2020 WL 3071708, at *5 (Tex. App.—Dallas June 10, 2020, no pet.) (mem. op.); *see also In re B.L.D.*, 113 S.W.3d 340, 354 (Tex. 2003) (holding due process generally does not require review of unpreserved error in termination cases).

2019, no pet.) ("Routinely subjecting a child to the probability that she will be left alone because her parent is in jail, endangers the child's physical and emotional well-being."). The risk was not a theoretical one: Grandmother testified that Mother and her children moved in with them because Mother could not provide for them after Father's incarceration. Father testified that he left Mother with ample resources to provide for Charles, but the jury could reasonably have decided that Grandmother was more credible. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (noting that even when the burden is clear and convincing, reviewing court defers to jury's reasonable witness credibility determinations). Nevertheless, Father argues that his criminal behavior is too remote to be relevant. However, the jury could "look to parental conduct occurring both before and after the child's birth" in making the endangerment determination. *See W.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00827-CV, 2020 WL 1174187, at \*4 (Tex. App.—Austin Mar. 12, 2020, no pet.) (mem. op.) (citing *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied)). Reviewing the record under the applicable standard, we conclude that legally sufficient evidence supports the jury's finding that Father engaged in a course of conduct that endangered Charles's well-being. *See C.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-00773-CV, 2018 WL 1354122, at \*3 (Tex. App.—Austin Mar. 16, 2018, pet. denied) (mem. op.) (upholding endangerment finding based on evidence that parent "participated in a substantial drug enterprise" for first two years of child's life until his arrest and incarceration). Because we conclude legally sufficient evidence supports the jury's subsection (E) finding, we do not address the other statutory grounds for termination. *See In re A.V.*, 113 S.W.3d at 362 (noting that sufficient proof of one statutory termination ground, coupled with best interest finding, is sufficient to support termination).

We now turn to whether there is sufficient evidence that termination is in Charles's best interest. The best-interest prong is "child-centered and focuses on the child's well-being, safety, and development." *A.C. v. Texas Dep't of Fam. & Protective Servs.*, 577 S.W.3d 689, 700 (Tex. App.—Austin 2019, pet. denied) (citing *In re A.C.*, 560 S.W.3d at 631). To determine whether termination serves the child's best interest, we consider several non-exclusive factors:

- the child's wishes;

- the child's present and future emotional and physical needs;

- any emotional and physical danger to the child now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist the individuals seeking custody to promote the best interest of the child;

- the plans for the child by the individuals or agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and

- any excuse for the parent's acts or omissions.

*In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (citing *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)). The absence of evidence on some of these considerations does not preclude a finding that termination is in the child's best interest, "particularly if the evidence [is] undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d at 27.

"A child's need for permanence through the establishment of a stable, permanent home" is "the paramount consideration in a best-interest determination." *In re*

16

*L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Father argues that there is insufficient evidence that termination advances this goal because Charles will live with Grandparents for the foreseeable future, regardless of the outcome of the case. Although everyone agrees that Grandparents provide an appropriate home, that does not necessarily mean that maintaining the parent-child relationship is in Charles's best interest. First, the record reflects that Father engaged in a consistent pattern of criminal activity. Father again argues that his behavior is too remote to be relevant, but "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *J.G.*, 592 S.W.3d at 525 (citing *In re B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.)). The record supports that Father's conduct resulted in his incarceration on four occasions and rendered Mother unable to provide for Charles, and the jury could have reasonably concluded that Father would continue that pattern after his release. *See In re L.N.C*, 573 S.W.3d 309, 319 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (holding parent's "ten-year criminal history" supported finding that termination was in best interest); *In re C.M., Jr.*, No. 14-17-00507-CV, 2017 WL 5895111, at *12 (Tex. App.—Houston [14th Dist.] Nov. 30, 2017, pet. denied) (mem. op.) (holding parent's "continued criminal conduct, including periods of incarceration, supports the fact finder's best-interest determination").

Father argues that he has developed through letters a relationship with Charles that termination would prevent him from developing. Grandparents testified that the Department gave them a single letter from Father and that it was largely incomprehensible. The caseworker testified that she received no other communication from Father in the three months prior to trial. Grandfather confirmed that he was not aware of other letters or any request from Father to have

17

"phone or video contact" with Charles and noted that Father sent "plenty of letters and notes" to Mother. Charles's counselor testified that Charles "doesn't have a relationship" with Father and that "it's almost like out of sight, out of mind." In contrast, Charles's relationship with Grandparents is strong. The caseworker testified that Charles is "extremely bonded" to them and described their home as "safe" and "nurturing." The guardian ad litem echoed the caseworker's testimony.

The counselor, the caseworker, and Charles's guardian ad litem also testified that termination is in Charles's best interest so that they can be adopted by Grandparents. As the counselor explained, it is "important for [Charles] to have closure and stability . . . so he'll know where he is going to be living and things are going to be okay." Additionally, the Department's adoption plans will allow him to maintain contact with Mother in a safe environment. The caseworker and guardian ad litem gave similar testimony that termination is in Charles' best interest because it would facilitate adoption by Grandparents, who are stable caregivers.

Reviewing the record under the appropriate standard of review and considering the relevant factors, we conclude that legally sufficient evidence supports the jury's finding that termination is in the best interest of Charles so that he can be adopted by Grandparents and remain in a home that provides him with stability. *See D.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00557-CV, 2021 WL 1418986, at \*12 (Tex. App.—Austin Apr. 14, 2021, no pet. h.) (mem. op.) (holding trial court could consider the value of stability provided by child's grandparents in contrast to "the emotional danger to [the child] in continuing a relationship with a mother who would come in and out of her life because of drug use or incarceration, disrupting any permanency or stability"). We overrule Father's remaining issue.

## CONCLUSION

We affirm the district court's judgment.

_____

Edward Smith, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:   June 17, 2021